**Marquis Aurbach**
Cody S. Mounteer, Esq.
Nevada Bar No. 11220
Brian R. Hardy, Esq.
Nevada Bar No. 10068
Jared M. Moser, Esq.
Nevada Bar No. 13003
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
cmounteer@maclaw.com
bhardy@maclaw.com
jmoser@maclaw.com

*Attorneys for Counter-Defendant*
*NouHgt Technologies, LLC*

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Nevada Select Royalty, Inc., | Case Number: 3:22-cv-00415-LRH-CSD |
| Plaintiff, | |
| vs. | **COUNTERDEFENDANT NOUHGT TECHNOLOGIES, LLC'S ANSWER TO JERRITT CANYON GOLD, LLC'S COUNTERCLAIMS** |
| Jerritt Canyon Gold LLC, | |
| Defendant. | **AND** |
| Jerritt Canyon Gold LLC, | |
| Counterclaimant, | **NOUHGT TECHNOLOGIES, LLC'S COUNTERCLAIMS AGAINST JERRITT CANYON GOLD, LLC** |
| vs. | |
| Nevada Select Royalty, Inc.; and NouHgt Technologies, LLC, | |
| Counterdefendants. | |
| NouHgt Technologies, LLC, | |
| Counterclaimant, | |
| vs. | |
| Jerritt Canyon Gold LLC, a Nevada limited | |

MAC:17128-001 4868691_2 11/7/2022 12:40 PM

liability company; DOE I through X,
inclusive; ROE ENTITIES I through X,
inclusive,

                    Counterdefendants.

Counterdefendant/Counterclaimant NouHgt Technologies, LLC ("NouHgt") as and for its Answer, Affirmative Defenses, and Counterclaims to Defendant Jerritt Canyon Gold LLC's ("Jerritt") Counterclaims, does hereby state as follows:

## ANSWER TO JERRITT'S COUNTERCLAIMS

1.      In responding to paragraph 55 of Jerritt's Counterclaims, NouHgt avers that the allegations therein call for legal conclusions to which no response is required.  To the extent a response is deemed necessary, NouHgt is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore, denies the same.

## PARTIES

2.      In responding to paragraph 56 of Jerritt's Counterclaims, NouHgt is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore, denies the same.

3.      In responding to paragraph 57 of Jerritt's Counterclaims, NouHgt avers that the referenced document speaks for itself and denies any allegation inconsistent therewith. As to the remaining allegations, NouHgt is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore, denies the same.

4.      In responding to paragraph 58 of Jerritt's Counterclaims, NouHgt admits the allegations therein.

## JURISDICTION AND VENUE

5.      In responding to paragraph 59 of Jerritt's Counterclaims, NouHgt avers that these allegations call for legal conclusions to which no response is required.  To the extent a

MAC:17128-001 4868691_2 11/7/2022 12:40 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  response is deemed necessary, NouHgt is without knowledge or information sufficient to

2  form a belief as to the truth of the allegations contained therein, and therefore, denies the

3  same.

4  **GENERAL FACTUAL ALLEGATIONS**

5      6.      In responding to paragraph 60 of Jerritt's Counterclaims, NouHgt admits that

6  Jerritt Canyon is successor-in-interest to the Licensee of the Amended Agreement to license

7  the Patent for use in mining operations at the Jerritt Canyon Mine in Elko County, Nevada.

8  NouHgt, however, denies the allegation that the Patent's purported benefits are limited to

9  "improved mercury removal during the mining manufacturing process." NouHgt further

10  denies the allegation that the "purported novelty of the Patent" was limited to its

11  specification of "a certain pH range."  As to the remaining allegations, NouHgt is without

12  knowledge or information sufficient to form a belief as to the truth of the allegations

13  regarding Jerritt's status, and therefore, denies the same. NouHgt denies all remaining

14  allegations therein.

15      7.      In responding to paragraph 61 of Jerritt's Counterclaims, NouHgt admits that

16  Jerritt utilized the process taught by the Patent. NouHgt is without knowledge or information

17  sufficient to form a belief as to the truth of the remaining allegations contained therein, and

18  therefore, denies the same.

19      8.      In responding to paragraph 62 of Jerritt's Counterclaims, NouHgt is without

20  knowledge or information sufficient to form a belief as to the truth of the allegations

21  contained therein, and therefore, denies the same.

22      9.      In responding to paragraph 63 of Jerritt's Counterclaims, NouHgt is without

23  knowledge or information sufficient to form a belief as to the truth of the allegations

24  contained therein, and therefore, denies the same.

25      10.      In responding to paragraph 64 of Jerritt's Counterclaims, NouHgt avers that

26  these allegations call for legal conclusions to which no response is required.  To the extent a

27  response is deemed necessary, NouHgt is without knowledge or information sufficient to

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

form a belief as to the truth of the allegations contained therein, and therefore, denies the same.

**[JERRITT'S] FIRST COUNTERCLAIM**

**DECLARATION OF NON-INFRINGEMENT**

11.     In responding to paragraph 65 of Jerritt's Counterclaims, NouHgt reasserts, realleges, and incorporates by this reference all prior responses as though fully set forth herein.

12.     In responding to paragraph 66 of Jerritt's Counterclaims, NouHgt admits that Jerritt stated to NouHgt and Nevada Select that Jerritt was no longer utilizing the patented process and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein, and therefore, denies the same.

13.     In responding to paragraph 67 of Jerritt's Counterclaims, NouHgt avers that these allegations call for legal conclusions to which no response is required.  To the extent a response is deemed necessary, NouHgt denies the remaining allegations contained therein.

14.     In responding to paragraph 68 of Jerritt's Counterclaims, NouHgt denies the allegations therein.

**[JERRITT'S] SECOND COUNTERCLAIM**

**DECLARATION THAT THE PATENT IS INVALID AND UNENFORCEABLE**

15.     In responding to paragraph 69 of Jerritt's Counterclaims, NouHgt reasserts, realleges, and incorporates by this reference all prior responses as though fully set forth herein.

16.     In responding to paragraph 70 of Jerritt's Counterclaims, NouHgt avers that these allegations call for legal conclusions to which no response is required.  To the extent a response is deemed necessary, NouHgt denies that any of the Patent's claims is invalid for any reason.  As to the remaining allegations, NouHgt is without knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore, denies the same.

/ / /

**MARQUIS AURBACH**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

17.     In responding to paragraph 71 of Jerritt's Counterclaims, NouHgt avers that the referenced document speaks for itself and denies any allegation inconsistent therewith. As to the remaining allegations, NouHgt avers that these allegations call for legal conclusions to which no response is required.  To the extent a response is deemed necessary, NouHgt denies that the Patent specification is indefinite and that any of the Patent's claims is invalid.

18.     In responding to paragraph 72 of Jerritt's Counterclaims, NouHgt avers that these allegations call for legal conclusions to which no response is required.  To the extent a response is deemed necessary, NouHgt denies that any of the Patent's claims is invalid for any reason, including, without limitation, due to anticipation, obviousness, or indefiniteness.

19.     In responding to paragraph 73 of Jerritt's Counterclaims, NouHgt denies the allegations therein.

## [JERRITT'S] THIRD COUNTERCLAIM

## DECLARATION THAT THE PATENT IS INVALID FOR PATENT MISUSE

20.     In responding to paragraph 74 of Jerritt's Counterclaims, NouHgt reasserts, realleges, and incorporates by this reference all prior responses as though fully set forth herein.

21.     In responding to paragraph 75 of Jerritt's Counterclaims, NouHgt avers that these allegations call for legal conclusions to which no response is required.  To the extent a response is deemed necessary, NouHgt is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore, denies the same.

22.     In responding to paragraph 76 of Jerritt's Counterclaims, NouHgt avers that the referenced document speaks for itself and denies any allegation inconsistent therewith. As to the remaining allegations, NouHgt avers that these allegations call for legal conclusions to which no response is required.  To the extent a response is deemed necessary,

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

NouHgt is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore, denies the same.

23.     In responding to paragraph 77 of Jerritt's Counterclaims, NouHgt avers that these allegations call for legal conclusions to which no response is required.  To the extent a response is deemed necessary, NouHgt avers that Jerritt is not entitled to any of the relief requested and is otherwise without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein, and therefore, denies the same.

24.     In responding to paragraph 78 of Jerritt's Counterclaims, NouHgt denies the allegations contained therein.

## [JERRITT'S] FOURTH COUNTERCLAIM

## DECLARATION THAT NO ROYALTIES ARE OWED PURSUANT TO THE

## AMENDED LICENSE AGREEMENT

25.     In responding to paragraph 79 of Jerritt's Counterclaims, NouHgt reasserts, realleges, and incorporates by this reference all prior responses as though fully set forth herein.

26.     In responding to paragraph 80 of Jerritt's Counterclaims, NouHgt is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore, denies the same.

27.     In responding to paragraph 81 of Jerritt's Counterclaims, NouHgt admits that the parties have a dispute in controversy relative to Jerritt's obligation to continue to pay royalties.  As to the remaining allegations, NouHgt avers that these allegations call for legal conclusions to which no response is required.  To the extent a response is deemed necessary, NouHgt is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore, denies the same

28.     In responding to paragraph 82 of Jerritt's Counterclaims, NouHgt denies the allegations contained therein.

/ / /

MAC:17128-001 4868691_2 11/7/2022 12:40 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

29.     Any allegation that is deemed to have not been responded to is hereby expressly denied.

## AFFIRMATIVE DEFENSES

All possible affirmative defenses may or may not have been asserted herein insofar as sufficient facts were not available to NouHgt after reasonable inquiry upon the filing of this pleading and, therefore, NouHgt asserts the following defenses based in fact or upon reasonable belief and hereby reserves the right to amend this Answer to allege appropriate or additional defenses, if subsequent investigation or discovery so warrants.

## FIRST AFFIRMATIVE DEFENSE

Jerritt's claims regarding the invalidity, unenforceability, misuse, and non-infringement of the patent-in-suit, at least in part, fail to state a claim upon which relief can be granted because the claims are not substantiated with sufficient facts to render them plausible. Similarly, Jerritt's claims fail to give NouHgt fair notice of the claims being asserted, since Jerritt references various provisions of patent law to allege numerous grounds for invalidity, yet Jerritt identifies none these allegations with specificity, nor does Jerritt provide sufficient facts on which to base such claims.  Further, with respect to the allegations of unenforceability of the patent-in-suit, Jerritt has failed to comply with FRCP 9(b), as Jerritt has failed to plead with particularity any facts, let alone facts which could support any claim the patent holder acted fraudulently before the U.S. Patent and Trademark Office upon which a claim for unenforceability could be substantiated.

## SECOND AFFIRMATIVE DEFENSE

Jerritt's counterclaims are barred, in whole or in part, to the extent that the conduct, action, or inaction of Jerritt constitutes an estoppel, laches, consent, or waiver.

## THIRD AFFIRMATIVE DEFENSE

Jerritt is not entitled to equitable relief inasmuch as it has been guilty of inequitable conduct and has failed to come into this action with clean hands, by virtue of its infringing activities, as alleged in NouHgt's counterclaims, which are incorporated by reference, and

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17128-001 4868691_2 11/7/2022 12:40 PM

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

consequently Jerritt is barred from reliance on and relief granted in equity by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Jerritt's counterclaims are barred, in whole or in part, because the Patent and all of its claims are valid, the Patent is enforceable, and the Patent is not being misused.

### FIFTH AFFIRMATIVE DEFENSE

Jerritt's counterclaims are barred, in whole or in part, because the Licensing Agreements at issue are valid and enforceable, and Jerritt has, through its actions, assented to and/or otherwise ratified the terms of the Licensing Agreements and acknowledged the validity and enforceability thereof.

### SIXTH AFFIRMATIVE DEFENSE

Upon information and belief, Jerritt, by its acts, errors, omissions and conduct, is barred and estopped from any recovery in this action, in whole or in part, because Jerritt has infringed and continues to infringe NouHgt's Patent whether through direct infringement, indirect infringement, or infringement through the doctrine of equivalents.

### SEVENTH AFFIRMATIVE DEFENSE

Jerritt is not entitled to attorneys' fees and costs.

### EIGHTH AFFIRMATIVE DEFENSE

Jerritt's claims are barred, in whole or in part, to the extent that the conduct of NouHgt toward the U.S. Patent and Trademark Office was reasonable, justified, equitable, lawful, and in good faith.

### NINTH AFFIRMATIVE DEFENSE

Jerritt's claims are barred, in whole or in part, to the extent that NouHgt at all times acted in good faith with reasonable and probable cause in procuring the Patent and entering into the Licensing Agreements at issue.

### TENTH AFFIRMATIVE DEFENSE

Jerritt's claims for attorneys' fees are barred, in whole or in part, to the extent that

MAC:17128-001 4868691_2 11/7/2022 12:40 PM

1  Jerritt has failed to allege an exceptional case as to support an award of attorneys' fees

2  pursuant to 35 U.S.C. § 285.

3  ### ELEVENTH AFFIRMATIVE DEFENSE

4  Jerritt's claims are barred, in whole or in part, to the extent that the acts of NouHgt

5  did not interfere with Jerritt's contracts with third persons.

6  ### TWELFTH AFFIRMATIVE DEFENSE

7  Jerritt's claims are barred, in whole or in part, to the extent that Jerritt failed to take

8  reasonable action to mitigate its damages.

9  ### THIRTEENTH AFFIRMATIVE DEFENSE

10  The relief sought by Jerritt is barred, in whole or in part, because at all times,

11  NouHgt's conduct was lawful and privileged.

12  ### FOURTEENTH AFFIRMATIVE DEFENSE

13  The damages complained of in Jerritt's claims were not factually, legally and/or

14  proximately caused by NouHgt's activities.

15  ### FIFTEENTH AFFIRMATIVE DEFENSE

16  Jerritt's claims and any damages claimed by Jerritt are the result of the acts of third

17  persons and not the acts of NouHgt.

18  ### SIXTEENTH AFFIRMATIVE DEFENSE

19  Jerritt's claims fail to state a claim against NouHgt upon which relief can be granted

20  for Patent Misuse.

21  ### SEVENTEENTH AFFIRMATIVE DEFENSE

22  Jerritt's claims are barred, in whole or in part, to the extent that there was no legal

23  misuse of the Patent.

24  ### EIGHTEENTH AFFIRMATIVE DEFENSE

25  At all times material to Jerritt's claims, NouHgt's activities have been in full

26  compliance with all applicable rules, regulations, codes, ordinances and/or statutes.

27  / / /

**MARQUIS AURBACH**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17128-001 4868691_2 11/7/2022 12:40 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## NINETEENTH AFFIRMATIVE DEFENSE

Jerritt's claims are barred, in whole or in part, to the extent that NouHgt did not enter into an illegal or unlawful agreement to injure Jerritt.

## NOUGHT'S COUNTERCLAIMS AGAINST JERRITT CANYON GOLD, LLC

Counterdefendant/Counterclaimant NouHgt Technologies, LLC ("NouHgt"), by and through its attorneys of record, the law firm of Marquis Aurbach Chtd., alleges and complains against Counterclaimants/Counterdefendants Jerritt Canyon Gold, LLC ("Jerritt") and First Majestic Silver Corp. ("First Majestic," and together with Jerritt and the DOE and ROE defendants, "Defendants") as follows:

## JURISDICTION AND VENUE

1. Jurisdiction and venue for these Counterclaims are proper in this Court by virtue of Jerritt's decision to appear and assert claims against NouHgt in this forum.

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b) both because it involves federal questions and also because it involves patents.

3. This Court has supplemental jurisdiction over the subject matter of the Fourth Claim for Relief pursuant to 28 U.S.C. § 1367.

4. This Court has *in personam* jurisdiction over Defendants because they conduct business in this district and are engaged in patent infringement in this district.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400 because a substantial part of the events or omissions giving rise to the claim occurred in this district, namely Defendants' unauthorized use of one or more processes that infringe upon NouHgt's Asserted Patent.

## PARTIES

6. NouHgt is a Nevada limited liability company with its principal place of business in Elko, Nevada.

/ / /

7.      Jerritt is also a Nevada limited liability company with its principal place of business in Elko, Nevada.

8.      Upon information and belief, First Majestic is a Canadian corporation with its principal place of business in Vancouver, Canada but with operations and a continuing and systematic presence in Mexico and throughout the United States, including its ownership of the Jerritt Canyon Mine in Elko, NV.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### THE '148 PATENT

9.      On or about July 24, 2009, a provisional application was filed with the U.S. Patent and Trademark Office ("USPTO"), on behalf of Inventor Graham Dickson ("Mr. Dickson"), relating to the Asserted Patent.

10.     Thereafter, on or about July 22, 2010, a non-provisional patent application ("Non-Provisional Application") was filed with the USPTO.

11.     The Non-Provisional Application No. 12/841,783 (the "Application") was published by the USPTO as Pub. No. US 2011/0027153 A1, on February 3, 2011.

12.     On or about November 4, 2014, the USPTO issued U.S. Patent No. 8,877,148 ("'148 Patent" or the "Asserted Patent"), titled "Apparatus and Method for Removing Mercury From A Gas."

13.     A true and correct copy of the '148 Patent is attached hereto as **Exhibit A**.

14.     The USPTO applied a patent term adjustment, or PTA, of 246 days, making the expiration of the '148 Patent set to be March 25, 2031.

15.     On or about March 31, 2011, Mr. Dickson assigned and conveyed to Celec, Inc. ("Celec") of British Columbia, Canada, his entire right, title, and interest in and to the "Application and all substitute, continuation, continuation-in-part and divisional applications based in whole or in part on the Patent Application, and including all patents resulting therefrom and all reissues and extensions thereof, and including any and all rights of priority resulting from the filing of any such applications within the United States."

MAC:17128-001 4868691_2 11/7/2022 12:40 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

16.     On May 5, 2015, Celec executed an assignment with an effective date of May 31, 2011, whereby Celec assigned and conveyed to NouHgt its entire right, title, and interest in and to the '148 Patent "and all substitute, continuation, continuation-in-part and divisional applications based in whole or in part on the Patent, and including all patents resulting therefrom and all reissues and extensions thereof, and including any and all rights of priority resulting from the filing of any such applications within the United States."

17.     Thus, NouHgt is the legal owner of the '148 Patent and has been at all times relevant hereto.

18.     The '148 Patent generally relates to the use of a chlorine solution reacting with gas-borne mercury to form mercuric chloride so as to reduce the mercury emissions to more environmentally-friendly levels.

19.     The '148 Patent is comprised of six claims, only one of which is independent and exemplary in this action:

> A method for reacting gas borne mercury with chlorine solution to form mercuric chloride, the method comprising: contacting a mercury bearing gas with chlorine Solution at a pH of between about 6.8 and 7.0 and at a temperature of less than about 40°C.1 and wherein said chlorine solution has a flow rate of about 10.7 gpm/ft.

Ex. A ('148 Patent), at col. 15, ll. 9–15.

20.     The gaseous mercury is adsorbed on the surface of the solution where it then reacts with the chlorine gas in solution to form mercuric chloride.

21.     The resulting mercuric chloride can also react with the gaseous mercury on the surface of the solution to form mercurous chloride, which is a solid and which then precipitates.

22.     The reaction with chlorine is much faster and leads to much better scrubbing and much lower emissions (by a factor of over 50), than if just scrubbed with mercuric chloride.

/ / /

/ / /

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17128-001 4868691_2 11/7/2022 12:40 PM

23.     The first (3.5-year) and second (7.5-year) maintenance fees for the '148 Patent have been paid, and the third (11.5-year) maintenance fee has not yet become due. *See* **Exhibit B**.

24.     All of claims of the '148 Patent are valid, and the '148 Patent is enforceable.

### THE LICENSE AGREEMENTS

25.     On or about May 31, 2011, NouHgt entered into a License Agreement ("First Agreement") with Veris Gold Corp. ("Veris"), licensing Veris' use of the '148 Patent.

26.     On or about May 19, 2015, NouHgt entered into an Amended License Agreement ("Amended Agreement") with Veris, which effectively terminated the First Agreement and granted Veris a perpetual license to use the '148 Patent at the Jerritt Canyon Mine in Elko County, Nevada.

27.     The Jerritt Canyon Mine, like all Nevada facilities must by law use Maximum Achievable Control Technology ("MACT") for its mercury emissions.

28.     Over a three-year period of testing, nearly every month, it was determined that the MACT for the Jerritt Canyon Mine is scrubbing of the "off gases" by a water solution containing chlorine gas, *i.e.,* NouHgt's technology as taught by the '148 Patent.

29.     Pursuant to the Amended Agreement, Veris agreed to pay NouHgt a per ton royalty on throughput produced by the Jerritt Canyon Mine beginning on July 1, 2015, and on the first day of each successive month thereafter.

30.     Jerritt is the successor-in-interest to Veris and, upon information and belief, continues to use the '148 Patent at the Jerritt Canyon Mine while refusing to pay the agreed-upon royalties for such use, making Jerritt's use of the '148 Patent unauthorized.

31.     Under Section 10, the Amended Agreement only terminates "(a) At such time as the Parties mutually agree in writing; or (b) At any time at the option of either Party, if the other Party materially defaults in the performance or observance of any of its obligations and fails to remedy the default within thirty (30) days after receiving a written demand to do so from the Party who is not in default."

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17128-001 4868691_2 11/7/2022 12:40 PM

**NOUHGT ASSIGNS ITS RIGHTS TO RECEIVE ROYALTY PAYMENTS**

32.     On or about August 19, 2019, NouHgt entered into an Assignment ("Assignment") with Nevada Select Royalty, Inc. ("Nevada Select").

33.     Pursuant to the Assignment, Jerritt signed an Acknowledgment and Consent to Assignment of Royalty Payments Agreement ("Acknowledgment"), confirming that Jerritt would make subsequent royalty payments under the Amended Agreement to Nevada Select.

**JERRITT CEASES PAYING FOR ITS LICENSE TO USE THE '148 PATENT**

34.     Upon information and belief, on or about January 7, 2022, First Majestic sent a letter ("Termination Letter"), expressly on behalf of Jerritt, to NouHgt and Nevada Select's parent company(ies), Gold Royalty Corp. and Ely Gold Royalties, Inc., purporting to unilaterally terminate the Amended Agreement, in violation of the Amended Agreement's terms, and ceased paying royalties to Nevada Select, in violation of the Assignment and the Acknowledgment.

35.     Jerritt purports to have "hired a consultant" ("DOE Consultant"), with an unidentified consulting firm ("ROE Consulting Firm") who, after "studying the process and results concluded that the pH range specified in the Patent [between about 6.8 and 7.0] was inefficient and not performing and therefore recommended changing the manufacturing parameters to operate outside of the pH range specified in the Patent."   ECF No. 1-2 (Countercl.) at 11, ¶ 61.

36.     According to Jerritt, it changed its operating permit "to specify the new pH parameters that would be utilized" at the Jerritt Canyon Mine.  *Id.* at ¶ 62.

37.     However, according to the Mercury Operating Permit issued by the Nevada Department of Environmental Protection ("NDEP"), dated July 13, 2022, the Mercury Scrubber – one piece of equipment utilizing the process taught by the '148 Patent – "shall operate with a pH set point of 6.9," precisely within the approximate pH range taught by the Asserted Patent.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17128-001 4868691_2 11/7/2022 12:40 PM

38.     Upon information and belief, systems or process units of statutorily-defined tier-1 thermal units that emit mercury at Jerritt Canyon Mine include, without limitation, Jerritt's east and west roasters and the refinery and carbon regeneration kiln.  *See* Nev. Admin. Code § 445B.3651(4).

39.     Upon information and belief, the technologies for control of mercury emissions used in the aforementioned systems and process units, other than the mercury scrubber, include, without limitation, Jerritt's gas quench scrubber, venturi dust scrubber, sulfur dioxide ($SO_2$) scrubber, tail gas scrubber, sodium hypochlorite injection system, and venturi mercury wet-scrubbing/carbon-polishing system.  *See* Nev. Admin. Code § 445B.3651(4).

40.     Notwithstanding Jerritt's position that it made a slight variation in the pH level of the chlorine solution used, if there are any differences between the process used by Jerritt and the process taught by the '148 Patent (which NouHgt disputes), then in order to continue in compliance with the Nevada Mercury Control Program, any such differences would have to be insubstantial to a person of ordinary skill in the art.

41.     Jerritt asserts no other variation in its process other than to the pH of the solution used, so, upon information and belief, it is undisputed that Jerritt's process used to remove mercury from gas in the operations at the Jerritt Canyon Mine practice every limitation of the Asserted Patent.

**JERRITT CONTINUES TO WILLFULLY INFRINGE THE '148 PATENT, LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS**

42.     Jerritt's infringement has been, and continues to be, knowing, intentional, and willful.

43.     Jerritt had pre-suit knowledge of the '148 Patent as demonstrated by its predecessor-in-interest's execution of the Amended Agreement, recognition of the validity of the claims in the '148 Patent, and commitment to pay to use the Asserted Patent.

/ / /

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

44.     Furthermore, Jerritt's pre-suit knowledge of the validity of all claims of the '148 Patent, and its enforceability, is evidenced by Jerritt's consistent and continued payment of royalties to NouHgt, or its assignee pursuant to the Amended Agreement and Acknowledgement and Assignment, respectively.

45.     The willfulness of Jerritt's infringement is further demonstrated by the air quality permit issued by NDEP in July 2022, which requires Jerritt to operate its Mercury Scrubber with a pH set point of 6.9, which is directly within the range taught by the Asserted Patent's exemplary claim 6.

46.     In the Specification of the '148 Patent, it even teaches that "[i]n alternative embodiments the chlorine solution is at a pH of between about 6.5 and about 7.5 … " Ex. A at col. 2, ll. 21–22.

47.     The Specification further provides this:

> In embodiments the pH of the chlorine solution in mercury scrubber (I) may be optimised to promote the reaction between elemental mercury and dissolved chlorine gas. The chlorine solution may also contain mercuric chloride and may contain a pH adjusting agent Such as Soda ash. In embodiments the pH of the chlorine solution in mercury scrubber (I) **may be between about 6 and 8**, and **may be between about 6.5 and 7.5** and **may be between about 6.7 and 7.2** and **may be between about 6.8 and 7.0** and in particular embodiments **may be about 6.9**.

*Id.* at col. 7, ll. 13–22 (emphases added).

48.     Jerritt continues to use the process taught by the '148 Patent, but it avers that it has changed the pH of the chlorine solution used in that process, which averment is demonstrably false; therefore, Jerritt has been and continues to be directly and willfully infringing the Asserted Patent.

49.     The pH range listed in the MACT process is one where the dissolved chlorine has the highest Oxidation Reduction Potential and produces the fastest reaction rates with the dissolved chlorine gas.

50.     Indeed, test work completed by outside laboratories and sanctioned by NDEP showed that moving the solution pH outside of the stated pH parameters, even slightly,

1    produced emissions that were 25 times greater than emissions produced when the

2    parameters were properly observed.

3        51.    Jerritt is, no doubt, aware of the history of the Jerritt Canyon Mine that it is

4    now operating, including its closure in or around 2008, when the Sierra Club is believed and

5    understood to have put pressure on the U.S. Environmental Protection Agency ("EPA"),

6    which in turn put pressure on NDEP relating to the Jerritt Canyon Mine's emissions.

7        52.    Upon information and belief, the only way to resolve the Jerritt Canyon

8    Mine's excess mercury emissions at that time was to implement the process taught by the

9    '148 Patent in order to produce emissions that were approximately 16 times lower than that

10   being suggested at that time by the Sierra Club and the EPA.

11       53.    Even if Jerritt's assertion that its slight variation of the pH of the chlorine

12   solution used in the process taught by the '148 Patent does not constitute literal

13   infringement, Jerritt is still directly infringing under the doctrine of equivalents.

14       54.    To wit, upon information and belief, to the extent Jerritt is not literally

15   infringing the '148 Patent, Jerritt's operation is believed to be doing the same work (*i.e.,*

16   removing mercury from a gas), in substantially the same way (*i.e.,* "reacting gas borne

17   mercury with chlorine solution to form mercuric chloride, the method comprising:

18   contacting mercury bearing gas with chlorine solution at a pH of between about 6.8 and

19   7.0"), to accomplish substantially the same result (*i.e.,* reduction or removal of mercury

20   from gas).

21                          **FIRST CLAIM FOR RELIEF**

22                  **(Direct Patent Infringement – Against Jerritt)**

23       55.    NouHgt repeats, realleges, and incorporates by this reference all allegations

24   previously asserted as though fully set forth herein.

25       56.    NouHgt owns the '148 Patent, all of the claims of which are valid, and which

26   Asserted Patent is fully enforceable.

27   / / /

MAC:17128-001 4868691_2 11/7/2022 12:40 PM

*MARQUIS AURBACH*
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

57. As set forth in detail above, Jerritt has willfully infringed and continues to willfully infringe the '148 Patent either literally or under the doctrine of equivalents.

58. Upon information and belief, Jerritt has been notified by Nevada Select of its unauthorized use of the process taught by the '148 Patent without payment, and consequently has been made aware of its infringement.

59. Jerritt's acts of infringement of the '148 Patent have directly and proximately caused and will continue to directly and proximately cause NouHgt damages for which NouHgt is entitles to compensation pursuant to 35 U.S.C. § 284.

60. This case is also exceptional and, therefore, NouHgt is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

## SECOND CLAIM FOR RELIEF

### (Contributory Patent Infringement –

### Against DOE Consultant and ROE Consulting Firm)

61. NouHgt repeats, realleges, and incorporates by this reference all allegations previously asserted as though fully set forth herein.

62. DOE Consultant and ROE Consulting Firm had knowledge of Jerritt's infringing activity "after studying the process and results."

63. DOE Consultant and ROE Consulting Firm then intentionally induced or encouraged Jerritt to directly infringe the Asserted Patent when they, upon information and belief, apparently instructed Jerritt to vary the pH of the chlorine solution used in the patented process ever-so-slightly, purportedly in an attempt to fabricate an argument that Jerritt was avoiding literal infringement of the '148 Patent.

64. Upon information and belief, DOE Consultant and ROE Consulting Firm knew or reasonably should have known that only a very minor change in the pH level of the chlorine solution use in Jerritt's Mercury Scrubber would not avoid practice of the process taught by the '148 Patent.

/ / /

MAC:17128-001 4868691_2 11/7/2022 12:40 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

65.     For example, the process apparently recommended to Jerritt by DOE Consultant and ROE Consulting Firm still uses a solution with a pH of "about 6.8 to 7.0," and Jerritt's most recently issued air quality permit – which was understood to have been sought and issued based on the feedback Jerritt received from DOE Consultant and ROE Consulting Firm – requires maintenance of a pH level, *i.e.,* 6.9, which is directly within that range identified in the '148 Patent.

66.     By virtue of their recommendation, understood to have been provided by DOE Consultant and ROE Consulting Firm to Jerritt in exchange for compensation, they induced, caused, or materially contributed to the infringing conduct of another, *i.e.,* Jerritt.

67.     As a direct and proximate result of the contributory infringement committed by DOE Consultant and ROE Consulting Firm, NouHgt has been damaged in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

### (Vicarious Patent Infringement – Against First Majestic)

68.     NouHgt repeats, realleges, and incorporates by this reference all allegations previously asserted as though fully set forth herein.

69.     Upon information and belief, First Majestic, as the owner of the Jerritt Canyon Mine, has the right and ability to supervise Jerritt's infringing activity vis-à-vis operation of the mine.

70.     Nevertheless, despite having the right to stop or limit the infringing activity, First Majestic has failed to do so.

71.     Upon information and belief, First Majestic, as the owner of the Jerritt Canyon Mine, and having sent the purported Termination Letter on behalf of Jerritt, has a direct financial interest in the infringing activity because the profits of Jerritt not only increased by its failure to pay royalties for use of the '148 Patent, those profits are believed to directly benefit First Majestic.

/ / /

MAC:17128-001 4868691_2 11/7/2022 12:40 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

72.     As a direct and proximate result of First Majestic's vicarious infringement, NouHgt has been damaged in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF

### (Intentional Interference With Contractual Relations –

### Against Jerritt and First Majestic)

73.     NouHgt repeats, realleges, and incorporates by this reference all allegations previously asserted as though fully set forth herein.

74.     NouHgt has a current contractual relationship with Nevada Select, *i.e.,* the Assignment.

75.     Jerritt and First Majestic knew of this contractual relationship.

76.     Jerritt and First Majestic intended to harm NouHgt by interfering in that contractual relationship by refusing to pay Nevada Select for use of NouHgt's '148 Patent.

77.     Jerritt and First Majestic had no privilege or justification to interfere with this contractual relationship.

78.     As a direct and proximate cause of Jerritt's and First Majestic's intentional interference with the contractual relationship between NouHgt and Nevada Select, NouHgt has been damaged in an amount to be determined at trial.

79.     As a direct and proximate cause of Jerritt's and First Majestic's intentional interference with the contractual relationship between NouHgt and Nevada Select, which was characterized by fraud, oppression or malice, express or implied, NouHgt is entitled to an award of punitive damages, in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, NouHgt rays for judgment against Defendants as follows:

80.     Judgment in its favor and against defendants, and each of them, on all of its causes of action, in an amount to be proven at trial;

/ / /

/ / /

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17128-001 4868691_2 11/7/2022 12:40 PM

81.     For a declaration that Jerrit has not and cannot meet its burden to demonstrate that any of the claims of the '148 Patent is invalid, and consequently, that the Asserted Patent is fully enforceable;

82.     For an award of punitive damages against defendants in an amount to be proven at trial;

83.     For an award of reasonable attorney fees;

84.     For costs of suit;

85.     For pre-judgment interest;

86.     For post-judgment interest; and

87.     For any further relief as the Court deems to be just and proper.

Dated this 7th day of November, 2022.

MARQUIS AURBACH

By   */s/ Jared M. Moser*
    Cody S. Mounteer, Esq.
    Nevada Bar No. 11220
    Brian R. Hardy, Esq.
    Nevada Bar No. 10068
    Jared M. Moser, Esq.
    Nevada Bar No. 13003
    10001 Park Run Drive
    Las Vegas, Nevada 89145
    *Attorneys for Counterdefendant/Counter-claimant NouHgt Technologies, LLC*

**MARQUIS AURBACH**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17128-001 4868691_2 11/7/2022 12:40 PM

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **COUNTERDEFENDANT NOUHGT TECHNOLOGIES, LLC'S ANSWER TO JERRITT CANYON GOLD, LLC'S COUNTERCLAIMS AND NOUHGT TECHNOLOGIES, LLC'S COUNTERCLAIMS AGAINST JERRITT CANYON GOLD, LLC** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 7th day of November, 2022.

☒       I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☐       I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

David A. Carrroll, Esq.
Nevada Bar No. 7643
Anthony J. DiRaimondo, Esq.
Nevada Bar No. 10875
Robert E. Opdyke, Esq.
Nevada Bar No. 12841
RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Parkway, Suite 1200
Las Vegas, NV 89169
*Attorneys for Defendant/Counter Claimant Jerritt Canyon Gold, LLC*

Laura K. Granier, Esq.
Nevada Bar No. 7357
Jessica L. Freitas, Esq.
Nevada Bar No. 16079
HOLLAND & HART LLP
5441 Kietzke Lane, Suite 200
Reno, Nevada 89511
*Attorneys for Plaintiff, Nevada Select Royalty, Inc.*

*/s/ Jessica Madsen*_____
An employee of Marquis Aurbach

MAC:17128-001 4868691_2 11/7/2022 12:40 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816