Laura K. Granier
(Nevada Bar No. 7357)
Robert C. Ryan
(Nevada Bar No. 7164)
Jessica L. Freitas
(Nevada Bar No. 16079)
HOLLAND & HART LLP
5441 Kietzke Lane, Suite 200
Reno, NV 89511-2094
Tel: 775.327.3000
Fax: 775.786.6179
LKGranier@hollandhart.com
RCRyan@hollandhart.com
JLFreitas@hollandhart.com
*Attorneys for Plaintiff/Counter-Defendant
NEVADA SELECT ROYALTY, INC.*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| NEVADA SELECT ROYALTY, INC., <br><br>  Plaintiff, <br><br> v. <br><br> JERRITT CANYON GOLD LLC., <br><br>  Defendant. | **Case No.: 3:22-CV-00415-LRH-CSD** <br><br><br> **RULE 12(B)(6) MOTION TO DISMISS DEFENDANT/COUNTER-CLAIMANT'S COUNTERCLAIMS** |
| JERRITT CANYON GOLD, LLC, <br><br>  Counter-Claimant, <br><br> v. <br><br> NEVADA SELECT ROYALTY, INC., and NOUGHT TECHNOLOGIES, LLC, <br><br>  Counter-Defendant. | |

1

Plaintiff/Counter-Defendant Nevada Select Royalty, Inc. ("Nevada Select") by and through the undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby move to dismiss the Defendant/Counter-Claimant Jerritt Canyon Gold, LLC's ("Jerritt") Counterclaims requesting a declaration of patent invalidity and unenforceability (Second Counterclaim); a declaration of patent invalidity for patent misuse (Third Counterclaim); and a declaration that no royalties are owed (Fourth Counterclaim).

This Motion is supported by the following Memorandum of Points and Authorities, the papers and pleadings on file, and any oral argument the Court may allow.

DATED       November 7, 2022

HOLLAND & HART LLP

/s/ Laura K. Granier
Laura K. Granier
Robert C. Ryan
Jessica L. Freitas
5441 Kietzke Lane, Suite 200
Reno, NV 89511-2094
*Attorneys for Plaintiff/Counter-Defendant*
*NEVADA SELECT ROYALTY, INC.*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In 2019, Jerritt signed an Acknowledgment & Consent ("Acknowledgement")[1] to an Assignment of Royalty Payments Agreement ("Assignment") between Nevada Select and NouHgt Technologies LLC ("NouHgt"). Ans./Countercl. ¶ 4. The Assignment transferred to Nevada Select NouHgt's right to receive royalties from Jerritt's exclusive license of, among other things, NouHgt's lawfully-acquired U. S. Patent No. 8,877,148 "the '148 Patent" and its subsequent related U.S. Patent No. 10,625,206 ("the '206 Patent"), which issued from a continuation of the '148 Patent application (the "Patents"). *See* Ex. 1 (Am. License § 8(b) ("The [licensed] Patent is all of the patents and patent applications relating to the Inventions ….")). In the Acknowledgement consenting to the transfer of royalty payments to Nevada Select, Jerritt explicitly "acknowledge[d] that … the [Patents'] License is current and in full force and effect" and that "[i]n no event" would Nevada Select be liable "for any costs or liabilities attributable to the use of the Patent." *Id.* (Acknowledgment §§ 3(a), 4). But as detailed in Nevada Select's complaint and admitted in Jerritt's Answer, in 2022 Jerritt unilaterally terminated its royalty payments to Nevada Select. Ans./Countercl. ¶ 5. Jerritt now contends in a Counterclaim that it does not owe those royalty payments but cites no contractual provision that allows Jerritt to unilaterally terminate the exclusive license that it bargained for in the Amended License Agreement ("Amended Exclusive License"). The Amended Exclusive License specifies the limited ways to terminate the license and does not identify or contemplate the licensee's decision to suddenly stop using the Patents as a basis for Jerritt to terminate the Amended Exclusive License. The Amended Exclusive License covers more than

---

[1] Nevada Select requests judicial notice of the Assignment, with its Exhibit A, the Amended License, and its Exhibit B, the Acknowledgement (attached as Exhibit 1) as "documents that are referred to in the complaint whose authenticity no party questions." *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000) (citing *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994)); *see CG Tech. Dev., LLC v. Zynga, Inc.*, No. 2:16-cv-00859-RCJ-VCF, 2017 U.S. Dist. LEXIS 23313, at *4 (D. Nev. Feb. 17, 2017). When considering motions to dismiss "[t]he court need not accept as true … allegations that contradict facts that may be judicially noticed by the court," *Shwarz*, 234 F.3d at 435, and in this Motion Nevada Select identifies where Jerritt's Counterclaims contradict these judicially noticeable contracts.

just the Patents—it also licenses, for example, "all associated confidential information" and future "improvements" made by NouHgt or Jerritt to the Patents. Ex. 1 (Am. License § 2(d)). Jerritt's attempt in its Counterclaim to demonstrate that it no longer uses NouHgt's patented technology is irrelevant and will be addressed at summary judgment, but Jerritt's remaining Counterclaims fail to plead sufficient facts to bring claims against Nevada Select.

Jerritt makes a series of unsubstantiated Counterclaims asserting that the Patents are invalid and unenforceable, but simply stating a conclusory legal reason that a "patent" could be "invalid" or "unenforceable" is insufficient to actually state a claim under black letter law. For example, Jerritt's Second Counterclaim argues that the Patents are "anticipated," "obvious," and "indefinite," but such claims require "factual allegations in support of its request for declaratory judgment that the … patent is invalid." *J & K IP Assets, LLC v. Armaspec*, Inc., No. 3:17-cv-07308-WHO, 2018 U.S. Dist. LEXIS 118467, at *5 (N.D. Cal. July 16, 2018). Jerritt provides no such factual allegations. In the Third Counterclaim Jerritt asserts that the Assignment is invalid for "patent misuse" because Nevada Select has allegedly sought royalty payments beyond the life of the Patents, but patent misuse is only an affirmative defense and cannot function as a counterclaim. Regardless, no such contractual language exists—both the Assignment and the Amended Exclusive License only last "for a term ending on the earlier of expiration of the Patent or the life of the Jerritt Canyon Mine." Ex. 1 (Am. License § 2(a)). In addition, the patent misuse Counterclaim fails to allege the required element of anticompetitive effect of the alleged misuse and any facts showing anticompetitive effect. *See Princo Corp. v. ITC*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (en banc). Finally, in the Fourth Counterclaim Jerritt states its defense of Nevada Select's original state court claims, that it was contractually "not required to pay royalties under" any agreement once it allegedly "stopped utilizing the" Patents. Ans./Countercl. ¶ 80. But Jerritt again ignores that the contracts do not allow it to unilaterally terminate its royalty payment obligations, disregards that the Amended Exclusive License licenses to Jerritt more than just the Patents, and simply repeats one of its affirmative defenses.

4

Therefore, Jerritt fails to state a claim for relief. Jerritt's Second, Third, and Fourth Counterclaims should be dismissed for failing to state a claim under the applicable pleading standards.

## II. SUMMARY OF FACTUAL ALLEGATIONS

Jerritt admitted in its Answer that "it is successor-in-interest to a party to" the Amended Exclusive License and that it signed the "Acknowledgment and Consent to the Assignment" of royalty payments to Nevada Select. Ans./Countercl. ¶¶ 2, 4. Jerritt goes on to admit to unilaterally "terminating the Amended [Exclusive License] Agreement" because it "assert[ed] it [was] no longer obligated to make any payments thereunder." *Id.* ¶ 5. Jerritt then argues in its Counterclaim that it no longer uses the Patents' prescribed pH range in its mining activities. *Id.* ¶¶ 62–64. Jerritt next asserts in its Second Counterclaim, with no factual support, that the Patents are "invalid and unenforceable" because they are "based on prior patents and prior technology" and are therefore anticipated, obvious, and yet also indefinite. *Id.* ¶¶ 70–72. Jerritt's Third Counterclaim contends that Nevada Select engaged in patent misuse by attempting to seeking royalties "in perpetuity" beyond "the limited monopoly granted by the Patent," but fails to allege anticompetitive effect of the alleged misuse and also does not identify any facts to support or substantiate its claim, which is undermined by the express terms of the relevant agreements. *See id.* ¶ 76; *Princo Corp.*, 616 F.3d at 1328. Finally, in the Fourth Counterclaim Jerritt attempts to rely on its assertions regarding its purported non-use of the Patents' literally claimed pH range to make the contractual assertion that it was "not required to pay royalties" under the Assignment, Ans./Countercl. ¶ 81, but again fails to provide any support, facts, or contractual provision establishing alleged non-use of the Patents' claimed subject matter as a basis to terminate the Assignment or the Amended Exclusive License.

## III. LEGAL ARGUMENT

### A. Legal Standard

Under Rule 12(b)(6), "[w]here a counterclaim 'fail(s) to state a claim upon which relief can be granted,' it must be dismissed." *Tannerite Sports, LLC v. Jerent Enters., LLC*, No. 6:15-cv-00180-AA, 2016 U.S. Dist. LEXIS 57942, at *3 (D. Or. May 2, 2016) (citation

5

omitted). The Court applies the *Twombly/Iqbal* pleading standard to both patent validity and non-infringement claims, evaluating whether Jerritt "allege[d] 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (citation omitted); *see id.* at *15. Sufficient factual allegations must be "'more than labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Turf v. US Turf LLC*, No. 2:21-cv-01749-JCM-DJA, 2022 U.S. Dist. LEXIS 185179, at *4 (D. Nev. Sep. 30, 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Because counterclaims "must contain sufficient allegations of underlying facts" to support its assertions, *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), failing to provide those facts means that the claim "does not meet the *Twombly/Iqbal* standard" and should be dismissed. *J & K IP Assets, LLC*, 2018 U.S. Dist. LEXIS 118467, at *8 (citation omitted).

**B.    Jerritt Previously Agreed the Amended Exclusive License was Valid and is Estopped from Claiming Otherwise.**

"Under ordinary principles of contract and estoppel, a party that has entered into a contract may be estopped from denying a term, fact, or performance arising from the contract." *TMI Prods. v. Rosen Elecs., L.P.*, No. ED CV 12-02263-RGK (SPx), 2013 U.S. Dist. LEXIS 194095, at *6 (C.D. Cal. Nov. 27, 2013). Jerritt is estopped from claiming the Patents are "invalid" as a basis for withholding royalty payments under the Assignment, Acknowledgment, and the Amended Exclusive License through both equitable and contractual estoppel. Here, Jerritt procured an "exclusive" license to the Patents, including the additional associated intellectual property, and ensured the Patents' owner would not "[c]ompete in any way with [Jerritt's] business." Ex. 1 (Am. License §§ 2(d), 6(b)). Jerritt signed the Acknowledgment, which "acknowledge[d] that … the [Patents'] License is current and in full force and effect" and further stated that "[i]n no event shall [Nevada Select] … be liable to [Jerritt], [NouHgt], or to any other person or entity in any way, for any costs or liabilities attributable to the use of the Patent." *Id.* (Acknowledgment §§ 3(a), 4). In so doing, Jerritt affirmed that the Amended Exclusive License was "in full force" and that it understood that NouHgt assigned the royalties to Nevada Select. *Id.* But Jerritt now attempts to claim that the Patents within the Amended Exclusive License were always invalid and unenforceable, and

6

that it need not pay royalties if it was not using the subject matter covered by the Patents—thereby contravening Jerritt's previous representation and agreement in the Acknowledgment. The Court should not condone or reward such inequitable conduct that would lead to an unreasonable and unjust result. Jerritt is estopped from procuring any such result here.

"The doctrine of equitable estoppel prevents a party from 'assert[ing] legal rights that[,] in equity and good conscience[,] should not be available due to a party's conduct.'" *Goldman v. Vigilant Ins. Co.*, No. 2:19-cv-02227-JAD-BNW, 2022 U.S. Dist. LEXIS 177163, at *12 (D. Nev. Sep. 29, 2022) (citation omitted). To demonstrate equitable estoppel, "(1) 'the party to be estopped must be apprised of the true facts'; (2) 'that party must intend that his conduct shall be acted upon or must so act that the party asserting estoppel has the right to believe it was so intended'; (3) 'the party asserting estoppel must be ignorant of the true state of the facts'; and (4) 'the party asserting estoppel must have detrimentally relied on the other party's conduct.'" *Id.* at *13 (citation omitted). Here, Jerritt and its predecessor-in-interest have been using the Patents in its mine for years, and "apprised of the true facts" regarding the Patents and their use, asserted in the Acknowledgment that the Amended Exclusive License for the Patents and other included intellectual property was valid such that Jerritt would pay royalties to Nevada Select based solely on its sales during the term of the Patents (including any patents on improvements by NouHgt or Jerritt). *Id.* Jerritt utilized the benefit from this exclusive license for years and utilized the Patents and related intellectual property without competition from NouHgt or any other NouHgt licensee. *See* Ans./Countercl. ¶ 61; Ex. 1 (Am. License, signed in 2015).

This caused Nevada Select to detrimentally rely on the assertions in Jerritt's 2019 Acknowledgment and pay a significant amount of money for the right to receive royalty payments from Jerritt's exclusive use of the Patents for the life of those Patents. *See* Ex. 1 (Assignment § 3). All the while, Jerritt provided no notice to Nevada Select that Jerritt would not pay royalties for its exclusive license during the term of the licensed Patents and, instead, led Nevada Select to reasonably believe, given Jerritt's representation, that it would continue to pay the royalty. "Equitable estoppel 'precludes a party from claiming the benefits of a

7

contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Gengler v. United States*, 453 F. Supp. 2d 1217, 1238 (E.D. Cal. 2006) (citation omitted). The facts alleged in Jerritt's own Counterclaim therefore show that it is equitably estopped from changing its position and representation in the Acknowledgment to now claim the Patents are invalid or unenforceable as a basis for not paying royalties to Nevada Select. The Counterclaim acknowledges that it is bound by the Amended Exclusive Agreement and yet tries to avoid the "burdens that contract imposes." *Id.*; *see* Ans./Countercl. ¶¶ 60, 63.

Furthermore, although there are some patent cases where "even a party that has clearly … waive[d] its right to raise an invalidity defense may … subsequently renege on the promise and raise the defense" under the *Lear v. Adkins*, 395 U.S. 653 (1969) doctrine, *TMI Prods.*, 2013 U.S. Dist. LEXIS 194095, at *7, this is not such a case where patent invalidity is relevant. The royalty obligations in the license are not dependent on whether Jerritt utilizes subject matter covered by the Patents and are lawfully only dependent on identified product sold by Jerritt. *See infra* Section III.E.

Even if, assuming only for the sake of argument, that Jerritt could assert patent invalidity as a basis for withholding royalties from Nevada Select in violation of the terms of the Acknowledgment, Jerritt would have needed to have provided "*Lear* Notice." Jerritt "cannot invoke the protection of the *Lear* doctrine until it (i) actually ceases payment of royalties, and (ii) provides notice to the licensor that the reason for ceasing payment of royalties is *because it has deemed the relevant claims to be invalid*." *Studiengesellschaft Kohle, M.B.H. v. Shell Oil Co. ("Shell Oil")*, 112 F.3d 1561, 1568 (Fed. Cir. 1997) (emphasis added). The Ninth Circuit emphasized "[t]he licensee must clearly notify the licensor that the licensee is challenging the patent's validity." *Rite-Nail Packaging Corp. v. Berryfast, Inc.*, 706 F.2d 933, 937 (9th Cir. 1983) (per curiam).

But here, while Jerritt fulfilled the first element of *Lear* Notice by ceasing to pay Nevada Select the contracted royalties, Jerritt explains in its Answer that it did *not* assert patent invalidity in its letter to Nevada Select—"it notified [Nevada Select] that it no longer owed ongoing royalties *because it no longer utilized* the Patent." Ans./Countercl. ¶ 63 (emphasis

8

added). This "delayed a timely challenge to the validity of the patent" and thus "the rationale for *Lear* was undermined" such that Jerritt's *Lear* notice was insufficient. *MedImmune, Inc. v. Genentech, Inc.*, 535 F. Supp. 2d 1000, 1017–18 (C.D. Cal. 2008) (citation omitted). As such, Jerritt "cannot invoke … the *Lear* doctrine" and its patent invalidity claims should be dismissed as contractually estopped by the Acknowledgment. *Shell Oil*, 112 F.3d at 1568.

Thus, the principles of equitable and contractual estoppel and *Lear* notice requirements bar Jerritt's attempt to claim that invalidity relieves it of the obligation to pay royalties to Nevada Select. Jerritt cannot first assert the Patents' license is valid to induce Nevada Select to pay for the right to receive royalties and then turn around and disclaim the terms of its own Acknowledgment. And as discussed further below, neither the Acknowledgment nor the License permit Jerritt to unilaterally terminate its royalty payments in any event.

### C. The Second Counterclaim Also Fails to State a Claim for Patent Invalidity Because It Neither Alleged Invalidity of All the Patent Claims in the Patents Nor Alleged Any Factual Support.

Jerritt contends that the Patents are "invalid" for "being anticipated under 35 U.S.C. § 102," "being obvious under 35 U.S.C. § 103," and because the "specification" of the Patents "do[es] not meet the definiteness requirements … under 35 U.S.C. § 112." Ans./Countercl. ¶¶ 70–71. First, in litigation, "patents are presumed valid, a party attempting to overcome this presumption of validity must carry a heavy burden; invalidity must be proven by clear and convincing evidence." *Elan Microelectronics Corp. v. Pixcir Microelectronics Co. Ltd.*, No. 2:10-cv-00014-GMN-PAL, 2013 U.S. Dist. LEXIS 76983, at *56 (D. Nev. May 30, 2013).

In addition, Patents as a whole are not abstract concepts that are "valid" or "invalid," but are made up of specific "patent claims"—the numbered statements of invention scope at the back of the patents—that each separately "define the metes and bounds of the patent's invention." *2-Way Computing, Inc. v. Nextel Fin. Co.*, No. 2:11-cv-00012-JCM-PAL, 2012 U.S. Dist. LEXIS 145839, at *14 (D. Nev. Oct. 9, 2012); '148 Patent, Col. 1, ll. 6–Col. 15, ll. 27; '206 Patent, Col. 1, ll.7–Col. 16, ll. 25. Because Jerritt wholly omits any allegation that any, much less all, the patent claims in the Patents are anticipated, indefinite, or obvious, Jerritt has not stated a claim for patent invalidity and its Second Counterclaim must be dismissed. *J*

9

*& K IP Assets*, 2018 U.S. Dist. LEXIS 118467, at *5 (dismissing counterclaims for invalidity and observing that the counterclaims failed to reference "any particular claims of the '424 patent").

Second, Jerritt similarly provides no factual basis for its contentions of patent invalidity. Jerritt simply makes conclusory statements that the "Patent" is "anticipated," "obvious," and "indefinite" without identifying: (i) any prior art rendering all of both licensed Patents' patent claims anticipated and obvious; and (ii) words from all such claims that are indefinite and facts in support showing why they are all indefinite. *See* Ans./Countercl. ¶¶ 70–71.

At the outset, Jerritt cannot cite to "the Court's Local Patent Rules" to defer producing facts sufficient to plead a plausible claim to a later stage of the litigation. Ans./Countercl. ¶ 72. Where the Local Patent Rules "require[] much more detailed allegations than *Iqbal* and *Twombly* do, … it is not redundant to hold infringement [or invalidity] plaintiffs to the lesser strictures of Civil Rule 8(a) at the pleading stage." *CG Tech. Dev., LLC v. FanDuel, Inc.*, No. 2:16-cv-00801-RCJ-VCF, 2017 U.S. Dist. LEXIS 1511, at *10 (D. Nev. Jan. 4, 2017); *see Pure Parlay, LLC v. Stadium Tech. Grp., Inc.*, No. 2:19-cv-00834-GMN-BNW, 2020 U.S. Dist. LEXIS 18561, at *8 (D. Nev. Feb. 5, 2020) (dismissing plaintiff's complaint for failure to state a claim for patent infringement because "the Complaint does not contain factual content indicating how Defendants' software practices each element of the patented method"); *see also Xilinx, Inc. v. Invention Inv. Fund I LP*, No. C 11-0671 SI, 2011 U.S. Dist. LEXIS 81986, at *18 (N.D. Cal. July 27, 2011) (dismissing a patent invalidity claim on a motion to dismiss because plaintiff's "bare-bones recitation of statutes does not meet the requirements of *Twombly* and *Iqbal* and does not put defendants on notice of the basis of Xilinx's claims of invalidity"). Jerritt must allege sufficient facts to support any claims of patent invalidity, and this burden is extraordinarily high. *Santa Fe-Pomeroy, Inc. v. P & Z Co.*, 569 F.2d 1084, 1091 (9th Cir. 1978) ("By statute, all patents are presumed to be valid and the burden of establishing invalidity rests upon the party asserting it. The statutory presumption means that 'patentees are heavily favored as a class of litigants.'" (internal citations omitted)).

To justify a claim under 35 U.S.C. § 102 for being anticipated, Jerritt must demonstrate that "a single prior art reference disclose[d] *every* limitation of [the Patents'] claim." *Net Moneyin, Inc. v. VeriSign Inc.*, No. CV-01-441-TUC-RCC, 2007 U.S. Dist. LEXIS 98227, at *7 (D. Ariz. July 13, 2007) (emphasis added). Jerritt's burden is to invalidate each and every claim that makes up the Patents. But here, Jerritt fails to identify *any* prior art, omits any discussion of particular claims within the Patents, and consequently does not provide "fair notice to enable [Nevada Select] to defend itself effectively." *Starr*, 652 F.3d at 1216; *cf. MyGo, LLC v. Mission Beach Indus., LLC*, No. 3:16-cv-02350-GPC-RBB, 2017 U.S. Dist. LEXIS 4344, at *3 (S.D. Cal. Jan. 11, 2017) (observing "MyGo alleges that MyGo's published patent application is prior art to the subject matter of MBI's patent application," identifying the alleged prior art in the Complaint). Instead, Jerritt simply asserts the Patent is "based on prior patents and prior technology that was in the public domain," without identifying those prior patents or technology. Ans./Countercl. ¶ 70. This objectively fails to discuss particular claims within the Patents or even allege that every claim was anticipated by virtue of being "based upon prior patents." *Id.* Ultimately, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

Similarly, for a claim of obviousness under 35 U.S.C. § 103, Jerritt must include "allegations identifying prior art or explaining how that art anticipates or renders obvious any particular claims of the … patent." *J & K IP Assets, LLC*, 2018 U.S. Dist. LEXIS 118467, at *5. Demonstrating obviousness is "a heavy burden and [Jerritt] must rebut the presumption [of validity] by clear and convincing evidence." *Omark Indus. v. Textron, Inc.*, 688 F.2d 1242, 1250 (9th Cir. 1982). Because obviousness under Patent law is extraordinarily detailed and differs from the conventional definition of "obvious," Jerritt must plead facts to demonstrate "that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention" and would have a "reasonable expectation of success in doing so," among other facts specific to each and every claim within the Patents. *Separation Design Grp. Ip Holdings v. Inogen, Inc.*, No. LA CV15-08323 JAK (JPRx), 2017

11

U.S. Dist. LEXIS 234888, at *6–7 (C.D. Cal. June 1, 2017) (citation omitted); *see id.* at *7 (citing the four *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966) obviousness requirements: "(1) the scope and content of prior art; (2) the difference, if any, between claims and prior art; (3) the level of ordinary skill in pertinent art; and (4) secondary considerations such as commercial success and satisfaction of long felt but unresolved needs"). But Jerritt failed again to reference *any* prior art and provides no facts demonstrating obviousness such that Nevada Select could be on "notice" of the content of Jerritt's claim. *CG Tech. Dev., LLC*, 2017 U.S. Dist. LEXIS 23313, at *3. Where Jerritt simply makes conclusory "counterclaims for declaratory judgment that the … patent is invalid as anticipated under 35 U.S.C. § 102 and obvious under 35 U.S.C. § 103, but … fails to include any allegations identifying prior art or explaining how that art anticipates or renders obvious any particular claims of the … patent," without including plausible facts, the Counterclaim should be dismissed. *J & K IP Assets, LLC*, 2018 U.S. Dist. LEXIS 118467, at *5–6.

Finally, Jerritt also claims that "certain aspects of the specification of the Patent" are indefinite under 35 U.S.C. § 112. Ans./Countercl. ¶ 71. But it is the *claims* within a patent, not the specification generally, that is reviewed for indefiniteness under Section 112. *See Neev v. Alcon Labs., Inc.*, No. SACV 15-00336 JVS(JCGx), 2016 U.S. Dist. LEXIS 188954, at *6 (C.D. Cal. Dec. 22, 2016) ("A patent is not definite just because 'a court can ascribe some meaning a patent's claims'— instead, '[t]he claims . . . must provide objective boundaries.'" (citation omitted)). The claims within the Patents must be read in the context of all the other claims and the specification to determine indefiniteness. *Augme Techs., Inc. v. Yahoo!, Inc.*, No. C 09-05386 JCS, 2011 U.S. Dist. LEXIS 109886, at *13–14 (N.D. Cal. Sep. 13, 2011). And again, Jerritt does not allege facts relating to particular claims within the Patents to support its assertion that the "Patent" is indefinite.

Jerritt's conclusory statement does not explain how "one so skilled would [not] readily understand any particular language in the patent" claims so as to make any of the Patents indefinite. *Rosemount, Inc. v. Beckman Instruments, Inc.*, 569 F. Supp. 934, 940 (C.D. Cal. 1983). Furthermore, Jerritt admits it was *successfully* using the Patents from at least the

12

signing of the Acknowledgment in 2019 until 2022, when it decided to allegedly change the pH value utilized.  Ans./Countercl. ¶ 61 ("After utilizing the process claimed within the Patent ….").  Jerritt cannot explain how its previous clarity regarding the Patents' use suddenly became clouded.  The fact that Jerritt no longer wants to pay for use of the Patents does not render the Patents indefinite.  Jerritt's failure to identify language in the Patents that Jerritt allegedly does not understand or finds vague, leaves Nevada Select entirely without notice as to the alleged indefiniteness and without such facts the Counterclaim must be dismissed.  *W. Holdings, LLC v. Metabolic Research, Inc.*, No. 3:13-cv-00440-RCJ-WGC, 2013 U.S. Dist. LEXIS 168078, at *4 (D. Nev. Nov. 26, 2013) ("The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

### D. The Third Counterclaim for Patent Misuse Should Be Dismissed Since It Is Only a Defense to an Infringement Claim and Because It Fails to Allege Anticompetitive Effect and Is Contrary to the License Term Provisions.

Jerritt's Third Counterclaim for patent misuse incorrectly argues, among other things, that Nevada Select is "attempt[ing] to collect royalty payments beyond the scope of the limited monopoly granted … by the Patent" by collecting the royalty "in perpetuity." Ans./Countercl. ¶¶ 75–76.  First, patent misuse is a defense to an assertion of patent infringement and may be used as an affirmative defense to a patent infringement claim but is *not* the basis for an affirmative claim against Nevada Select, who makes no such claim here.  Where Jerritt's "Counterclaim[] for patent misuse [against Nevada Select] is not brought in an action based on an assertion of patent infringement [by Nevada Select], [it] therefore should not be brought other than as an affirmative defense." *Shuffle Master, Inc. v. Awada*, No. 2:05-CV-1112-RCJ (RJJ), 2006 U.S. Dist. LEXIS 71748, at *11 (D. Nev. Sep. 26, 2006).  Since Nevada Select does not allege patent infringement, the Third Counterclaim should be dismissed against Nevada Select for this reason alone.

Furthermore, it has long been black letter patent law that a patent license may license subject matter to a licensee and require royalty payments for the remaining term of a patent

13

even if the licensee terminates use of the licensed subject matter. *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 833 (1950). Therefore, the main question is not the merely term of the license; "the key inquiry under the patent misuse doctrine is whether, by imposing the condition in question, the patentee has impermissibly broadened the physical or temporal scope of the patent grant *and has done so in a manner that has anticompetitive effects.*" *Princo Corp.*, 616 F.3d at 1239 (emphasis added); *accord ESCO Corp. v. Cashman Equip. Co.*, 158 F. Supp. 3d 1051, 1068 (D. Nev. 2016) (*quoting Princo*). Jerritt does not discuss or allege any anticompetitive effect, or state facts showing any such effect, and thus fails to state a claim for patent misuse. *See* Ans./Countercl. ¶¶ 74–77.[2] For this reason too, Jerritt's Third Counterclaim should be dismissed.

Finally, with regard to the license at issue and Nevada Select's only involvement with the Patents in issue, Jerritt states that Nevada Select characterizes the license as "a perpetual license." Jerritt is confusing the common license grant of perpetual license (including after the term), with the otherwise expressly stated term of the license contract. As the Amended Exclusive License makes clear, the license contract term, as opposed to its license grant, only lasts "for a term ending on the … expiration of the Patent" and the Patents expire on the same date. Ex. 1 (Am. License § 2(a)). The Assignment of Royalties similarly specifically states that the "Assignment shall remain in effect for the term of the License." *Id.* (Assignment § 9(a)). So, while it is true that the license <u>grant</u> is "perpetual," the license *term* and its royalty obligations in particular expressly terminate when the term of the patents in issue expire. *Id.* (Am. License § 2(a)). "Because [Jerritt] includes no factual allegations to support its counterclaim," such "a counterclaim for declaratory judgment of invalidity" should be dismissed. *Ely Holdings Ltd. v. O'Keeffe's, Inc.*, No. 18-cv-06721-JCS, 2019 U.S. Dist. LEXIS 35143, at *2–3 (N.D. Cal. Mar. 5, 2019).

---

[2] Even were the Patents being misused, any misuse can be purged by the patent owner. *Republic Molding Corp. v. B. W. Photo Utils.*, 319 F.2d 347, 350 (9th Cir. 1963); *see* Ans./Countercl. ¶ 77.

### E. The Fourth Counterclaim Fails to State a Claim that Jerritt Does Not Owe Royalties Under the Assignment Because it Ignores the Contractual Provisions.

Jerritt's final Counterclaim seeks a declaration from the Court that would rewrite the parties' contracts and the express terms to which Jerritt agreed. Jerritt claims "since it completely stopped utilizing the … Patent" it is therefore "not required [under any contract] to pay royalties for its production which were not produced utilizing ... the Patented process." Ans./Countercl. ¶¶ 80–81. But the contracts do not provide for such unilateral termination of Jerritt's obligations. Jerritt ignores the controlling contractual provisions to which it is bound: no provisions in the "Amended Agreement, the Assignment, or the Acknowledgment" allow for Jerritt's unilateral termination due to its non-use. *Id.* ¶ 80. Jerritt still holds the exclusive right to the Patent—"[t]he License includes the right to exploit and <u>use all present and future rights</u> in connection with the Patents and Inventions," Ex. 1 (Am. License § 2(d) (emphasis added)), and royalty payments are calculated by "a per ton ... throughput" produced by Jerritt's mine. *Id.* (Am. License § 3). And non-use is not indicated in the Amended Exclusive License or Assignment as a reason to terminate the royalty payments promised for Jerritt to retain this right. *See id.* (Assignment § 2 (Duty of Licensee to Make Payments to Royalty Purchaser), *id.* § 3 (Payment), *id.* § 9 (Default & Termination); Am. License § 3 (Royalties), *id.* § 5 (Term), *id.* § 10 (Termination)).

Ultimately, where Jerritt seeks a declaration of this Court to excuse it from its breach of contract, Jerritt "must allege" how it "was excused from performance." *Hayes v. Bank of Am. Corp.*, No. 2:11-cv-01503-GMN-GWF, 2012 U.S. Dist. LEXIS 135191, at *6 (D. Nev. Sep. 21, 2012). Furthermore, "it is within a district court's discretion to dismiss an action for declaratory judgment." *Area 55, Inc. v. Amazon.com, Inc.*, No. 11-CV-0145-H (NLS), 2011 U.S. Dist. LEXIS 159987, at *8 (S.D. Cal. July 25, 2011). In reviewing the underlying contract "[a] court cannot, under the guise of construction, add words to a contract, which would impermissibly re-write that contract." *Westlands Water Dist. v. United States*, 337 F.3d 1092, 1103 (9th Cir. 2003) (citation omitted). Where, as here, there is no articulated basis within the contract excusing Jerritt's royalty payments due to nonuse, Jerritt "failed to adequately plead"

15

that it was excused from "performance under the agreement," and failed to state a valid basis for a claim for declaratory relief. *Hayes*, 2012 U.S. Dist. LEXIS 135191, at *11; *see Area 55, Inc.*, 2011 U.S. Dist. LEXIS 159987, at *8–9 (concluding "because no valid breach of contract claim has been stated, the Court declines to grant declaratory judgment" that had requested a "judicial determination of the rights of Amazon and Plaintiffs … under the … agreement").

Importantly, the Amended Exclusive License does not just allow Jerritt to use the Patents—it is explicitly a license for "the right to … use all present *and future rights* in connection with the Patents," including "all associate confidential information, knowhow, show how, drawings, manuals … and all improvements thereon or thereto." Ex. 1 (Am. License § 2(d) (emphasis added)). The royalty payments contemplated in the Assignment encompass all the rights licensed to Jerritt in the Amended Exclusive License, and the license clearly included additional intellectual property. Even were the Patents deemed invalid (which Jerritt did not assert to Nevada Select prior to this litigation and which Nevada Select strongly contests), Jerritt could still pay royalties on the non-patent assets it received. *See Chromalloy Am. Corp. v. Fischmann*, 716 F.2d 683, 686 (9th Cir. 1983) (concluding "to the extent that non-patent assets are transferred in a license agreement, … allowing compensation for the transfer of such assets despite the fact that royalty payment obligations are unenforceable, is proper"). Accordingly, Jerritt does not explain why it can keep those rights yet cease *all* royalty payments, even were there merit to its non-use arguments.

This Counterclaim requests the Court declare the opposite of what Nevada Select's Complaint asserts—that Jerritt's decision to stop paying royalties due to alleged nonuse of the patent is a breach of contract. Compl. ¶¶ 30–35. As such, "[a] court may dismiss counterclaims for declaratory relief that 'are either the "mirror image" of claims in the complaint or redundant of affirmative defenses.'" *Fourth Age Ltd. v. Warner Bros. Dig. Distribution*, No. CV 12-9912 ABC (SJHx), 2013 U.S. Dist. LEXIS 190339, at *9 (C.D. Cal. July 11, 2013) (citation omitted). Here, the Fourth Counterclaim is the "mirror image" of Nevada Select's First Claim for Relief for Breach of Contract, and is redundant of Jerritt's Eighth Affirmative Defense which argues that "ceasing to pay royalty payments is not a breach

16

of the contract." Ans./Countercl. ¶ 52. Accordingly, Jerritt's Fourth Counterclaim should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Nevada Select respectfully requests that the Court grant its Motion to Dismiss Jerritt's Second, Third, and Fourth Counterclaims for failure to state a claim.

Dated: November 7, 2022.

/s/ *Laura K. Granier*
Laura K. Granier (SBN 7357)
Robert C. Ryan (SBN 7164)
Jessica L. Freitas (SBN 16079)
HOLLAND & HART LLP
5441 Kietzke Lane, 2nd Floor
Reno, Nevada 89511
*Attorneys for Plaintiff/Counter-Defendant
NEVADA SELECT ROYALTY, INC.*

**TABLE OF EXHIBITS**

| Exhibit No. | Document |
|---|---|
| 1 | Assignment of Royalty Payments Agreement |

**Certificate of Service**

I hereby certify that on November 7, 2022, I filed the foregoing using the United States District Court CM/ECF, which caused all counsel of record to be served electronically.

/s/  Laura K. Granier

20195133_v1