# **EXHIBIT 1**

Assignment of Royalty Payments

Agreement

## ASSIGNMENT OF ROYALTY PAYMENTS AGREEMENT

This Assignment of Royalty Payments Agreement ("Assignment") is made as of August 16, 2019 (hereinafter the "Effective Date") by and between **Nevada Select Royalty, Inc.,** a Nevada corporation, P.O. Box 18127, Reno, NV 89511, which is a wholly owned subsidiary of **Ely Gold Royalties Inc.,** a British Columbia corporation, 2833 Burrard Street Box 49195, Vancouver, BC, V7X 1K8 (jointly and severally, collectively and together the "Royalty Purchaser"), and **NouHgt Technologies LLC**, a Nevada limited liability company, 545B 30th Street, Elko, Nevada 89801-4606 ("Company"). Royalty Purchaser and Company are collectively referred to herein as the "Parties."

WHEREAS, Company and Veris Gold Corp are parties to an Amended License Agreement, dated May 19, 2015 (hereinafter the "License"), a copy of which is attached hereto as Exhibit "A;"

WHEREAS, Company acknowledges that the License is current and in full force and effect, subject to certain delinquent royalty payments;

WHEREAS, Company represents and warrants that the balance of royalty payments due under the License on July 31, 2019 is US$27,753.30 (the "Payment Arrears");

WHEREAS, **Jerritt Canyon Gold LLC** (formerly WBVG LLC), a Delaware limited liability company ("Licensee") is the successor in interest to Veris Gold Corp. under the License and is currently using United States Patent No. 8,877,148 B2 issued on November 4, 2014 (the "Patent") in its operations at the Jerritt Canyon Mine, located in Elko County, Nevada and nowhere else in the world;

WHEREAS, Royalty Purchaser and Company entered into a Summary of proposed Principal Terms on May 17, 2019, pursuant to which they proposed to enter into a transaction by which Company assigns to Royalty Purchaser its right to receive payments on Royalties (the "Royalty Payments"), as provided for in Section 3 of the License entitled "Royalties;"

WHEREAS, Company, Royalty Purchaser and Licensee have entered into an Acknowledgement & Consent of Assignment of Royalty Payments Agreement dated August __, 2019 and attached hereto as Exhibit "B;"

WHEREAS, the Parties enter into this Assignment to more fully set forth the terms and conditions pursuant to which Royalty Purchaser shall receive the Royalty Payments.

NOW, THEREFORE, in consideration of the covenants and conditions contained herein, and other valuable consideration, the Parties to agree as follow:

1.    <u>Assignment</u>

Subject to the condition precedent described in Section 2 hereof, Company hereby assigns to Royalty Purchaser (1) all of its right to receive the Royalty Payments payable to Company under Section 3 of the License and (2) the right to receive the Payment Arrears.

2.    <u>Duty of Licensee to Make Payments to Royalty Purchaser.</u>

Licensee shall pay all Royalty Payments due under the License to Royalty Purchaser in the manner set forth in Section 3 of this Assignment, below.  Licensee shall otherwise continue perform its obligations under the License.

3.    <u>Payment</u>

For and in consideration of the assignment of the Royalty Payments pursuant to Section 1, above, Royalty Purchaser shall pay to Company the sum of $650,000.00, together with interest thereon in the manner set forth below, and together with the sum of $13,876.65 in exchange for assignment of the right to receive the Payment Arrears, all as provided in this Section 3, as follows: The "Closing" shall occur five (5) business days after the date of the Effective Date.  In consideration for the rights assigned hereunder, Royalty Purchaser will:

(a)    make the following cash payments to Company:

  i.    At Closing, US$300,000.00 ("Closing Payment"), plus US$6,938.33 (25% of Payment Arrears) representing the first installment of partial consideration for Royalty Purchaser's right to receive the Payment Arrears, plus any monies due under Section 3(b)

  ii.    US$150,000.00 on the first anniversary of Closing, plus US$7,500.00 representing interest at 5% from Closing (the "First Deferred Payment");

  iii.    US$150,000.00 on the second anniversary of Closing, plus US$15,375.00 representing interest at 5% from Closing (the "Second Deferred Payment");

  iv.    US$50,000.00 on the third anniversary of Closing, plus US$7,881.00 representing interest at 5% from Closing, plus US$6,273.90 (25% of the Payment Arrears) representing the remaining installment of partial consideration for Royalty Purchaser's right to receive the Payment Arrears (the "Third Deferred Payment," collectively the "Deferred Payments"); and

(b)    at Closing issue and deliver to Company a warrant certificate registered in the name of NouHgt Technologies LLC representing 500,000 non-transferable share

2

purchase warrants, each being exercisable to purchase one (1) common share in the capital stock of Ely Gold Royalties Inc. at the price of CAD $0.18 per share or such higher price as is approved by the TSXV (hereinafter the "Warrant Price") exercisable by Company in whole or in part, and in accordance with the terms thereof, immediately upon Closing and until the date that is thirty six (36) months following the date of issuance of a press release by Royalty Purchaser regarding the execution of this Assignment by all the Parties. Notwithstanding the foregoing, should the Warrant Price approved by the TSXV exceed CAN$0.18, the Closing Payment shall be increased by CAN$5,000.00 for each additional CAN$0.01 of Warrant Price. The foregoing amount to be added to the Closing Payment, if applicable, shall be immediately paid to Company on the later of the date of approval of the increased Warrant Price by the TSXV or the date of Closing.

Company hereby acknowledges that Royalty Purchaser's ability to issue securities is subject to the rules and policies of the Exchange, and that the securities issuable to the Company hereunder will be subject to resale restrictions imposed by applicable securities laws and the rules of the Exchange, which rules require that a restrictive legend be placed on all certificates delivered to the Company under this Assignment, and Company covenants and agrees with Royalty Purchaser to abide by all such resale restrictions and other Exchange requirements.

(c)     Notwithstanding any other provision in this Section 3, in the event Royalty Purchaser sells or otherwise conveys any interest in the Royalties to Licensee prior to or within twelve (12) months after Closing, Royalty Purchaser shall immediately pay to Company the full amount of the Payment Arrears, and the balance of the Closing Payment and Deferred Payment.

4.     Patent

(a)     Commencing on the Effective Date and continuing thereafter until the termination of this Assignment, if Company receives any payments under the License, then Company will immediately remit the same amount to Royalty Purchaser, without the necessity of any demand from Royalty Purchaser;

(b)     Per Section 4 of the License, Company confirms that it shall pay all government fees and take such other action as needed to maintain (e.g. prevent expiration of) the Patent and shall provide timely proof of same to Royalty Purchaser. If Company should fail to make payment of any such fees, or take any such other actions, then Royalty Purchaser shall have the right, but not the duty or obligation, to pay any such delinquent fees and/or take any such other actions to protect the Patent, and in such event Company shall promptly reimburse Royalty Purchaser for any and all such delinquent fees paid by Royalty Purchaser and for any and all costs and expenses incurred in taking such actions by Royalty Purchaser. In the alternative to such reimbursement, Royalty Purchaser may, in its sole discretion, deduct from any amount payable to Company under this Assignment any such delinquent fees paid by Royalty Purchaser and/or any such other costs and expenses incurred by

3

Exhibit 1, page 003

Royalty Purchaser;

(c)     Company hereby represents and warrants that, except for the Payment Arrears listed above, the License is in full force and effect and there are currently no events of default, pending or otherwise;

(d)     Company shall give Royalty Purchaser prompt written notice upon receipt by Company of notice or becoming aware of any third-party challenge to the ownership, validity or enforceability of the Patent or of any of the claims in the Patent. Company at its sole cost, expense and risk shall undertake to defend the Patent from and against any challenge to the ownership, validity or enforceability of the Patent or of any of the claims in the Patent. If Company does not undertake to defend, or abandons such defense of, the Patent from and against any such challenge, then Company shall give Royalty Purchaser prompt written notice of such decision by Company and Royalty Purchaser shall have the right, but not the duty or obligation, to undertake or continue to defend the Patent from and against any such challenge. If Royalty Purchaser chooses to undertake or continue to defend the Patent from and against any such challenge, then Company shall: (i) cooperate in all reasonable respects at Royalty Purchaser's request in the defense of such challenge; (ii) give its consent to be joined as a party in the defense of such challenge if necessary; (iii) execute any and all documents and instruments at Royalty Purchaser's request necessary or appropriate for Royalty Purchaser to exercise its rights under this Section in the defense of such challenge; and (iv) reimburse to Royalty Purchaser any and all costs and expenses incurred by Royalty Purchaser in connection with the defense of such challenge. In the alternative to such reimbursement, Royalty Purchaser may, in its sole discretion, deduct from any amount payable to Company under this Assignment any such costs and expenses incurred by Royalty Purchaser in connection with the defense of such challenge;

Except for the rights assigned to Royalty Purchaser in Section 1, above, Company will retain all rights as provided to it in the License. Company will maintain all its obligations under the License and notify the Royalty Purchaser immediately if it is provided a notice of default by the Licensee.

5.     Hold Harmless and Indemnity

In no event shall Royalty Purchaser, as the assignee of the right to receive the Royalty Payments and Payment Arrears only, be liable to Company or to any other person or entity in any way, for any costs or liabilities attributable to the use of the Patent.

COMPANY HEREBY COVENANTS AND AGREES TO INDEMNIFY, PROTECT, DEFEND AND HOLD ROYALTY PURCHASER, ITS SUCCESSORS AND ASSIGNS, HARMLESS FROM AND AGAINST ANY AND ALL DAMAGES OR CLAIMS FOR DAMAGES FOR ANY INJURY TO PERSONS OR PROPERTY, ENVIRONMENTAL SPILL, RELEASE OR CONTAMINATION, OR VIOLATION OF LAW, RULE OR

4

4835-2577-2187v2

REGULATION, OCCASIONED BY, ARISING OUT OF, OR RESULTING FROM USE OF THE PATENT, BY LICENSEE, ITS AGENTS, SERVANTS, EMPLOYEES, INDEPENDENT CONTRACTORS, SUCCESSORS OR ASSIGNS.

6.    No Implied Covenants

This Assignment contains no implied covenants, except for the covenant of good faith and fair dealing.

7.    Assignment of Patent

(a)    Company will have the right to assign the Patent, in whole or in part and will have sole and absolute discretion concerning the sale, assignment, transfer, conveyance, venturing, encumbrance or other disposition of the Patent, in whole or in part, on such terms and conditions as it determines appropriate. Company will require any transferee or assignee of any interest in the Patent to assume in writing this Assignment, and upon such assumption, Company will be released from all liability hereunder with respect to the transferred interest in the Patent, except for such liability as has accrued prior thereto.

(b)    Subject to Company's prior written consent, which shall not be unreasonably withheld, Royalty Purchaser may convey or assign its rights and duties under this Assignment to any unaffiliated company whose primary business is conducted in such manner as a "mining royalty company" as the same is understood in common usage, provided that such conveyance or assignment will not be effective against Company or Licensee until the Royalty Purchaser has delivered to Company and to Licensee a written and enforceable undertaking whereby such assignee agrees to be bound, to the extent of the interest assigned, by all of the terms and conditions of this Assignment.

(c)    In the event Royalty Purchaser desires to sell or assign its rights under this Assignment to any third party that is not a "mining royalty company" as that term is commonly understood, and the Royalty Purchaser receives a bona fide offer to purchase Royalty Purchaser's rights under this Assignment, the Royalty Purchaser shall give notice of such bona fide offer to purchase to Company, including all terms and conditions upon which the purchase and sale to the third party is to be consummated, and shall grant Company the right of first refusal for up to 60 days following receipt of such notice to acquire all or part of the Royalty Purchaser's rights upon the same terms and conditions set forth in the notice. After 60 days, if Company has failed to give Royalty Purchaser written notice of its intent to acquire the Royalty Purchaser's rights, the Royalty Purchaser may proceed with the proposed transfer to the third party subject to Company's prior written consent, which consent shall not be unreasonably withheld; provided, such conveyance or assignment will not be effective against Company until the assignee has delivered to Company a written and enforceable undertaking whereby such assignee agrees to be bound, to the extent of the interest assigned, by all of the terms and conditions of this Assignment.

5

8.   Production Stoppage

If Licensee ceases production for two (2) consecutive months or more, and production remains ceased at a time a scheduled payment becomes due hereunder (not to include the Closing Payment), then the Royalty Purchaser shall be allowed to delay payments until production resumes.

9.   Default and Termination

(a)   This Assignment shall remain in effect for the term of the License and any renewal term thereof, except that in the event that the Patent (or any of claims thereunder) is found by a court of competent jurisdiction to be invalid, this Assignment shall thereupon terminate and each Party shall have no further obligations to the other, except for those liabilities already incurred.

(b)   Under this Assignment, "breach" shall mean any failure of either Party to perform when due any material obligation owed under this Assignment following ten (10) days' written notice to the other Party of such breach.  In the event any party to this Assignment commences legal action in order to enforce the terms hereof, the prevailing party shall be entitled to an award of reasonable attorney fees and costs.  Royalty Purchaser shall have the right, but not the duty or obligation, to enforce the License on behalf of Company.

(c)   Notwithstanding any other provision contained herein, the following breaches by the Royalty Purchaser of the Deferred Payments will result in the automatic termination of this Assignment, except as otherwise provided in this Subsection 9(c):

(1)   Royalty Purchaser fails to pay the Closing Payment at Closing; or

(2)   Royalty Purchaser fails to pay a Deferred Payment when due, if not cured within 60 days of written notice as provided in Section 11, below.

In the event of the occurrence of a breach pursuant to either Subsection 9(c)(1) or 9(c)(2), above, Company shall thereupon be relieved of all further obligations under this Assignment and Royalty Purchaser shall have no further rights under this Assignment, and further, Royalty Purchaser shall thereafter immediately pay to Company all remaining amounts due as set forth in Section 3 of this Assignment, with all future payments being accelerated and due on the date of termination.

10.   Governing Law

This Assignment shall be governed by and construed in accordance with the laws of the State of Nevada.  The Fourth Judicial District Court in and for the County of Elko, State of Nevada shall have jurisdiction and venue over any disputes arising hereunder.

4835-2577-2187v2

11.   Notice

All notices and other communications between the Parties under this Assignment will be in writing and may be delivered personally or transmitted by e-mail to the following:

*To Royalty Purchaser*:
   Ely Gold Royalties Inc.
   2833-595 Burrard St.
   Box 49195
   Vancouver BC, V7X 1K8
   Attention: Trey Wasser, President & CEO
   Email: trey@elygoldinc.com

*With a copy to:*
   Nevada Select Royalty, Inc
   PO Box 18127
   197 North Argyle Ct
   Reno, NV 89511
   Phone: (775) 853-1913
   Email: jbaughman@elygoldinc.com

*To Company*:
   NouHgt Technologies LLC
   545B 30th Street
   Elko, NV 898014606
   Attn: Graham Dickson, Manager
   Email: graham@nouhgt.com

or to such addresses as each Party may from time to time specify by notice. Any notice will be deemed to have been given and received if personally delivered, then on the day of personal service to the recipient. Notice given by email will be deemed to have been given and received when the recipient acknowledges receipt.

12.   Counterparts and Facsimile/Electronic Signatures

Facsimile, electronic (including PDF) and counterpart signatures shall have the same force and effect as original signatures or the signatures of all Parties on the same document.

13.   Modification

This Assignment shall not be amended or modified except expressly in writing signed by authorized signatories of each of the Parties.

14.    Entire Agreement

This Assignment and the Acknowledgement attached hereto constitute the entire agreement between the Parties and supersede any prior understandings, agreements or representations between the Parties, written or oral, to the extent they have related in any way to the License or the rights assigned hereunder.  The Parties hereby expressly terminate, rescind and revoke the document entitled "NouHgt Technologies LLC/Ely Gold Royalties, Inc. Summary of Proposed Principal Terms" dated May 17, 2019 (the "Term Sheet").  This Assignment is intended to be a complete novation of the Term Sheet.

15.    Time of Essence

Time is of the essence with respect to all dates, times and deadlines stated in this Assignment.

16.    Attorney Fees and Costs

Each party shall bear its own attorney fees and costs incurred in the preparation of this Assignment and the Acknowledgement referred to herein.

**IN WITNESS WHEREOF,** each Party to this Assignment has caused it to be executed on the date first written above.

**COMPANY:**

NOUHGT TECHNOLOGIES LLC

By:    _____
Graham Dickson, Manager (as President of NouHgt Technologies Inc)

Date: 17th August 2019

**ROYALTY PURCHASER:**

ELY GOLD ROYALTIES INC.

By:    *Trey Wasser* _____
Trey Wasser, President & CEO

Date: _____8/16/2019_____

8

**ROYALTY PURCHASER:**

NEVADA SELECT ROYALTY, INC

By: _Trey Wasser_____
      Trey Wasser, Vice President

Date: __8/16/2019_____

9

# EXHIBIT A

## AMENDED LICENSE AGREEMENT

**THIS AGREEMENT** (the "Agreement"), is entered into as of May ⏐⟨, 2015, and is by and between:

      **NouHgt Technologies, LLC**, a limited liability company organized and existing under the laws of Nevada, USA (the "Licensor")

            and

      **Veris Gold Corp.**, a corporation organized and existing under the laws of British Columbia (the "Licensee").

This Agreement shall commence on the date the Company purchases the assets at Jerritt Canyon Mine, which is currently anticipated to be June 15, 2015 ("Effective Date").

Licensor and Licensee are referred to herein individually as "Party" and collectively as "Parties".

## BACKGROUND

A.    Licensor is the owner of certain inventions relating to the removal of mercury from gasses and/or liquids (the "Inventions"), as disclosed in U.S. Patent No. 8,877,148 issued November 4, 2014 and titled "Apparatus and Method for Removing Mercury From A Gas" (the "Patent").

B.    Licensor wishes to grant to Licensee, and Licensee wishes to receive, licenses under the Inventions and the Patent.

C.    Licensor and Licensee are parties to that certain License Agreement dated May 31, 2011 (the "First License"). The Parties wish to cure any deficiencies in payments under the First License and thereafter terminate the First License, and enter into this Agreement in place of the First License.

D.    The Parties further wish for the Licensee to assume the First License (as modified by this Agreement), and to assign its rights and obligations under the First License and this Agreement, from the Effective Date of this Agreement onward, to WBVG, LLC, a limited liability company organized and existing under the laws of Delaware, USA ("WBVG").

## AGREEMENTS

For good and valuable consideration, the receipt and sufficiency of which each Party hereby acknowledges, the Parties agree as follows:

1.    **First License.** The Parties agree that, as of the Effective Date of this Agreement, the total amount owed by Licensee to Licensor pursuant to the First License is C$142,808 (Pre June 9, 2014) plus C$316,495 (Post June 9, 2014) totals C$459,303 (the "Cure Amount"). On the Effective Date, upon assumption of this Agreement by Licensee and its assignment to WBVG, the Licensee, WBVG, or their designees shall pay the Cure Amount to Licensor, and such payment shall cure any and all defaults, and constitute full payment of any other

sums owed, under the First License. Once the Cure Amount is paid, the First License shall be irrevocably terminated and superseded and replaced by this Amended License Agreement.

2.   **License**.  Subject to the terms and conditions of this Agreement, including but not limited to the royalties payable under Section 3:

    (a)   Licensor grants to Licensee a perpetual license to the Patent for use at the Jerritt Canyon gold treatment plant in Nevada, USA (the "<u>Facility</u>") for a term ending on the earlier of expiration of the Patent or the life of the Jerritt Canyon Mine.

    (b)   Licensor grants to Licensee a perpetual license to the Inventions for use at the Facility for the life of the Jerritt Canyon Mine.

    (c)   The licenses granted in Sections 2(a) and 2(b) are referred to herein collectively as "<u>the License</u>".

    (d)   The License includes the right to exploit and use all present and future rights in connection with the Patents and Inventions, all associated confidential information, knowhow, show how, drawings, manuals, other technical documentation, and all improvements thereon or thereto, whether now existing or subsequently created.

3.   **Royalties**.  In consideration for the grant of the License, beginning on July 1, 2015 (from the Effective Date through June 30, 2015), and on the first day of each successive month thereafter, Licensee will pay to Licensor a per ton royalty on throughput by the Facility based on the Average Realized Gold Price ("<u>ARGP</u>"). AGRP is derived by dividing Total Gold Revenue during the previous month by Gold Ounces Sold during the previous month, both as recorded in the WBVG general ledger (Licensee historical account number 4020-20). For example AGRP for the month of March 2015 would be $1,172, calculated as Total Gold Revenue of $16,317,642 divided by Gold Ounces Sold of 13,919.  Royalties would be calculated as (all amounts in US$):

    (a)   $0.15 per ton if the ARGP is less than or equal to $1,300 per ounce; or

    (b)   $0.225 per ton if the ARGP is greater than $1,300 but less than or equal to $1,600 per ounce; or

    (c)   $0.30 per ton if the ARGP is greater than $1,600 but less than or equal to $2,000 per ounce; or

    (d)   $0.40 per ton if the ARGP is greater than $2,000 per ounce.

4.   **Patent Maintenance.**  Licensor shall pay all government fees and take such other action as needed to maintain (e.g., prevent expiration of) the Patent, and shall provide timely proof of same to Licensee.

5.   **Term.**  Except as set forth in Section 2(a), the License will begin on the Effective Date and will continue for the life of the mine.  This Agreement is not effective, and is null and void,

if WBVG does not purchase the assets at Jerritt Canyon Mine and/or if such sale is not approved by the Canadian and U.S. Bankruptcy Courts. This Agreement is also expressly conditioned upon Mr. Graham Cranstoun Dickson executing a valid consulting agreement, in the form to be agreed upon by WBVG and Dickson.

6. **Exclusivity**.  The Licensor will not directly or indirectly do any of the following during the Term:

   (a)   Conduct any of the activities permitted under the License, unless specifically authorized by, or in conjunction with, Licensee.

   (b)   Compete in any way with Licensee's business insofar as it relates in any way, directly or indirectly, to the use, commercialization or exploitation of the Inventions and the Patents; or

   (c)   License or otherwise permit or assist any other party to do any of the activities prohibited by this Section 6 at or in connection with the Facility.

7. **Assignment and Sub-Licensing**.

   (a)   Licensee may freely assign, convey and transfer its rights and obligations under this Agreement.

8. **Licensor's Representations and Warranties**.  Licensor represents and warrants to the Licensee that:

   (a)   Licensor has the full right, power and authority to grant the License;

   (b)   The Patent is all of the patents and patent applications relating to the Inventions that are partly or wholly, directly or indirectly, licensed or controlled by Licensor or any member or officer of Licensor;

   (c)   Licensor has no intellectual property rights relating to the Inventions that have not been included in the License.

   (d)   Neither Licensor or any member or officer of Licensor has granted to any third party any license, right, lien, pledge, charge, security interest or other encumbrance in the Inventions or Patent Rights that would conflict with or limit the rights granted to the Licensee under this Agreement;

   (e)   To the knowledge of Licensor, the grant of the License and the exploitation, use, marketing and commercialization of the Inventions do not and will not violate or infringe the terms of any agreement to which Licensor is a party or the intellectual property rights of any third parties;

   (f)   To the knowledge of Licensor, the Inventions and Patent are not the subject of any existing, threatened or reasonably foreseeable litigation, claim or action (including

3

but not limited to any claim involving invalidity, cancellation, re- examination, termination, refusal or limitation of the rights under the Patent); and

9.  **Improvements.**  Any improvements to the Inventions made by or for or on behalf of the Licensee will be the property of the Licensor, and the Licensor will have the sole right, in its sole discretion, to apply for, obtain, enforce and defend any intellectual property protection for all such improvements in its own name, at the Licensor's sole cost and expense.

10. **Termination.**  The License will terminate:

   (a)  At such time as the Parties mutually agree in writing; or

   (b)  At any time at the option of either Party, if the other Party materially defaults in the performance or observance of any of its obligations and fails to remedy the default within thirty (30) days after receiving a written demand to do so from the Party who is not in default.

11. **Independent Contractors.**  Licensor and Licensee are independent contractors. Neither Party will act or purport to act as the agent of the other.

12. **Notices.**  All notices and communications provided for in this Agreement shall be deemed given if in writing and delivered, if sent by facsimile, electronic mail, courier or sent by reputable overnight courier service (delivery charges prepaid) to any Party at the address specified below, or at such other address, to the attention of such other Person, and with such other copy, as the recipient Party has specified by prior written notice to the sending Party pursuant to the provisions of this Section 12. Any such notice or communication shall be deemed to have been given pursuant to this Agreement when delivered personally, when confirmed if by facsimile transmission or electronic mail, or on the calendar day after deposit with a reputable overnight courier service, as applicable.

*If to Licensor, to:*

NouHgt Technologies, LLC
545 30th Street
Elko, Nevada,
89801
Attention: Graham C. Dickson

Email: grahamcdickson@gmail.com

*If to Licensee, to:*

10241951.2/037640.0001                    4                    Exhibit 1, page 013

Veris Gold Corp
_900-688 West Hastings St._
_Vancouver, B.C. V6B121_
Attention: _Shaun Herris_
Facsimile: _(604) 688 9426_
Email: _shaun @ verisgold.com_

13. **Governing Law/Courts.** The interpretation, construction, and enforcement of this Agreement will be governed in all respects by the federal and state laws of Nevada, U.S.A., and the Parties consent to exclusive jurisdiction in the federal court located in Nevada, U.S.A.

14. **Further Assurances.** Each Party will execute and deliver to the other any additional instruments and take any additional steps that may be required to implement the intent expressed in this Agreement.

15. **Enurement.** This Agreement will bind and enure to the Parties and their lawful successors and permitted assigns.

16. **Integration.** This Agreement sets out the entire agreement between the Parties regarding the subject matter that it covers and it supersedes all previous dealings, understandings, and expectations of the Parties regarding that subject matter. There are no representations, warranties, conditions, or collateral agreements between the Parties relating to that subject matter except as expressly set out herein and in the instruments, if any, executed and delivered pursuant hereto.

17. **Severability.** If any provision, clause, or part of this Agreement, or the application thereof under certain circumstances, is held invalid, illegal or incapable of being enforced in any jurisdiction, (i) as to such jurisdiction, the remainder of this Agreement or the application of such provision, clause or part under other circumstances, and (ii) as for any other jurisdiction, any provision of this Agreement, shall not be affected and shall remain in full force and effect, unless, in each case, such invalidity, illegality or unenforceability in such jurisdiction materially impairs the ability of the Parties to consummate the transactions contemplated by this Agreement. Upon such determination that any clause or other provision is invalid, illegal or incapable of being enforced in such jurisdiction, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible even in such jurisdiction.

18. **Counterparts.** The Parties may execute and deliver this Agreement in two or more counterparts (no one of which need contain the signatures of all Parties), including facsimile or scanned PDF document, with the same effect as if all Parties had executed and delivered the same copy, each of which will be deemed an original and all of which together will constitute one and the same instrument.

IN WITNESS WHEREOF the Parties hereto have executed this Agreement as of the Effective Date through their respective officers, duly authorized for that purpose:

NouHgt Technologies, LLC

By: _____

Graham Dickson, President

Date: _____12 MAY 2015_____

Veris Gold Corp.

By: _____

Name: ___Shaun Heinrichs_____

Title: ___CFO_____

Date: ___19/05/2015_____

Acknowledged and Agreed to By:

WBVG, LLC

By: _____

Mark Strefling

General Counsel & Chief Operating Officer

Whitebox Advisors LLC

Date: _____

# EXHIBIT B

## ACKNOWLEDGEMENT & CONSENT
### of
### ASSIGNMENT OF ROYALTY PAYMENTS AGREEMENT

This Acknowledgement & Consent ("Acknowledgement") is made as of August __, 2019, (the "Effective Date"), by and between **Nevada Select Royalty, Inc.,** a Nevada corporation, PO Box 18127 Reno, NV 89511, which is a wholly owned subsidiary of **Ely Gold Royalties Inc.,** a British Columbia corporation, 2833 Burrard Street, Vancouver, BC, V7X 1K8 (jointly and severally, collectively and together the "Royalty Purchaser"); **NouHgt Technologies LLC,** a Nevada limited liability company, 545B 30th Street, Elko, Nevada 89801-4606 ("Company") and **Jerritt Canyon Gold LLC,** a Delaware limited liability company ("Licensee"), (collectively together, the "Parties").

WHEREAS, Licensee is the successor in interest to Veris Gold Corp. under the Amended License Agreement dated March 19, 2015 and attached hereto as Exhibit "A" (hereinafter the "License") and is currently using United States Patent No. 8,877,148 B2 issued on November 4, 2014 (the "Patent") in its operations at the Jerritt Canyon Mine, located in Elko County, Nevada and nowhere else in the world;

WHEREAS, Royalty Purchaser and Company entered into an Assignment of Royalty Payments Agreement on August 1, 2019, (the "Assignment"), a copy of which is attached hereto as Exhibit "B", pursuant to which they entered into a transaction by which Company assigns its rights to receive production royalties (the "Royalty Payments" or "Royalties"), as provided in Section 3 of the License;

WHEREAS, the Parties enter into this Acknowledgement to more fully set forth the terms and conditions pursuant to which the Royalty Purchaser shall receive the Royalty Payments, and for the Licensee to acknowledge and consent to the Assignment.

NOW, THEREFORE, in consideration of the covenants and conditions contained herein, and other valuable consideration, the Parties to agree as follow:

1.    Acknowledgement and Consent

Licensee acknowledges and consents to the Assignment, and agrees to be bound by the terms and conditions of this Acknowledgement.

2.    Operations; Reporting

Licensee shall at all times that the License is in existence:

(a)    pay Royalties directly to the Royalty Purchaser as provided in Section 9 of this Acknowledgement;

(b)    make available to the Royalty Purchaser, by the 15th day of each month, the

production tonnage amounts for the previous month and the Average Realized Gold Price, as defined in the License;

(c)    notify the Royalty Purchaser at the same time it notifies Company of any default by the Company;

(d)    make available reports to Royalty Purchaser as reasonably requested from time to time, including reports necessary to permit the Royalty Purchaser to meet its continuous disclosure obligations under applicable legislation and to meet requirements of securities exchanges having jurisdiction; and

(e)    otherwise perform all its obligations under the License.

Upon receipt of information in Section 2(b) of this Acknowledgement, above, Royalty Purchaser shall issue to the Licensee an invoice for the Royalty amount for the previous month, which invoice shall be due in 60 days.

3.    <u>Patent</u>

Licensee acknowledges that:

(a)    the License is current and in full force and effect;

(b)    the roaster equipment and processes are operating within current environmental specifications;

(c)    neither Company nor Licensee is in default of the License, except for the Payment Arrears (defined in the Assignment referenced herein);

(d)    there are no outstanding issues that could be construed as an event of default under the License, except for the Payment Arrears (defined in the Assignment referenced herein).

4.    <u>Hold Harmless and Indemnity</u>

In no event shall Royalty Purchaser, as the assignee of the Royalty and Payment Arrears, be liable to Company, Licensee or to any other person or entity, in any way, for any costs or liabilities attributable to the use of the Patent.

COMPANY HEREBY COVENANTS AND AGREES TO INDEMNIFY, PROTECT, DEFEND AND HOLD ROYALTY PURCHASER, ITS SUCCESSORS AND ASSIGNS, HARMLESS FROM AND AGAINST ANY AND ALL DAMAGES OR CLAIMS FOR DAMAGES FOR ANY INJURY TO PERSONS OR PROPERTY, ENVIRONMENTAL SPILL, RELEASE OR CONTAMINATION, OR VIOLATION OF LAW, RULE OR REGULATION, OCCASIONED BY, ARISING OUT OF, OR RESULTING FROM USE OF THE PATENT, BY LICENSEE, ITS AGENTS,

2

SERVANTS, EMPLOYEES, INDEPENDENT CONTRACTORS, SUCCESSORS OR ASSIGNS.

5.    <u>No Implied Covenants</u>

This Acknowledgement contains no implied covenants, except for the covenant of good faith and fair dealing.

6.    <u>Production Stoppage</u>

Licensee shall notify Royalty Purchaser of:

(a)    any proposed production stoppage other than general maintenance;
(b)    any notification from any government agencies requiring production stoppage;
(c)    any unforeseen production stoppage lasting for more than two (2) consecutive weeks or totaling fourteen (14) total days within any thirty (30) day period.

7.    <u>Governing Law</u>

This Acknowledgement shall be governed by and construed in accordance with the laws of the State of Nevada applicable therein. The Fourth Judicial District Court in and for the County of Elko, State of Nevada shall have jurisdiction and venue over any disputes arising hereunder.8.
    <u>Notices</u>

All notices and other communications between the Parties under this Acknowledgement will be in writing and may be delivered personally or transmitted by e-mail to the following:

*To Royalty Purchaser*:

Ely Gold Royalties Inc.
2833-595 Burrard St.
Box 49195
Vancouver BC, V7X 1K8
Attention: Trey Wasser, President & CEO
Email: trey@elygoldinc.com

*With a copy to:*
Nevada Select Royalty, Inc
PO Box 18127
197 North Argyle Ct
Reno, NV  89511
Phone: (775) 853-1913
Email: jbaughman@elygoldinc.com

3

*To Company*:

NouHgt Technologies LLC
545B 30th Street
Elko, NV 898014606
Attn: Graham Dickson, Manager
Email: graham@nouhgt.com

*To Licensee:*

Jerritt Canyon Gold LLC
HC 31 Box 78
Elko, NV 89801
Attn: Gary Nassif
Email: gnassif@jerrittcanyon.com

or to such addresses as each Party may from time to time specify by notice. Any notice will be deemed to have been given and received if personally delivered, then on the day of personal service to the recipient Party. Notice given by email will be deemed to have been given and received when the recipient acknowledges receipt.

9.    Payments

Company and the Licensee represent and warrant that the balance of payments due under the License at Closing $27,753.30 (the "Payment Arrears"). As provided in Section 4 of the Assignment, the Payment Arrears will be credited and otherwise paid to Royalty Purchaser.

All Royalty payments shall be made by check or bank wire to:

Nevada Select Royalty, Inc
PO Box 18127
197 North Argyle Ct
Reno, NV  89511
Phone: (775) 853-1913
Email: jbaughman@elygoldinc.com

10.    Counterparts and Facsimile/Electronic Signatures

Facsimile, electronic (including PDF) and counterpart signatures shall have the same force and effect as original signatures or the signatures of all Parties on the same document. 11.    Modification

This Acknowledgement shall not be amended or modified except expressly in writing signed by authorized signatories of each of the Parties.

**IN WITNESS WHEREOF**, each Party to this Acknowledgement has caused it to

4

be executed on the date first written above.

**COMPANY:**

NOUHGT TECHNOLOGIES LLC

By: _____
    Graham Dickson, Manager (as President
    of NouHgt Technologies Inc)

    Date: _19th Aug 2019_____


**ROYALTY PURCHASER:**

NEVADA SELECT ROYALTY, INC.

By: _Trey Wasser_____
    Trey Wasser, Vice President

    Date: _8/16/2019_____


**ROYALTY PURCHASER:**

ELY GOLD ROYALTIES INC.

By: _Trey Wasser_____
    Trey Wasser, President & CEO

    Date: _8/16/2019_____

**LICENSEE:**

JERRITT CANYON GOLD LLC

By: _G. Nassif_    Digitally signed by Gary Nassif digital signature
                   DN: cn=Gary Nassif digital signature, o, ou,
                   email=gnassif@jerrittcanyon.com, c=CA
                   Date: 2019.08.16 16:23:13 -04'00'

Its: _Gary Nassif, Senior Vice President_

    Date: _8/16/2019_____

5