UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NEVADA SELECT ROYALTY, INC., | Case No. 3:22-cv-00415-LRH-CSD |
| Plaintiff, | ORDER |
| v. | |
| JERRITT CANYON GOLD LLC, | |
| Defendant. | |

| |
|---|
| JERRITT CANYON GOLD LLC, |
| Counter-Claimant, |
| v. |
| NEVADA SELECT ROYALTY, INC., and NOUGHT TECHNOLOGIES, LLC, |
| Counter-Defendants. |

| |
|---|
| NOUGHT TECHNOLOGIES, LLC, |
| Counter-Claimant, |
| v. |
| JERRITT CANYON GOLD LLC; DOE I through X, inclusive; ROE ENTITIES I through X, inclusive, |
| Counter-Defendants. |

| |
|---|
| FIRST MAJESTIC SILVER CORP., |
| Counter-Claimant, |
| v. |
| NOUGHT TECHNOLOGIES, LLC, |
| Counter-Defendant. |

1

Before the Court is Plaintiff/Counter-Defendant Nevada Select Royalty, Inc.'s ("Nevada Select") motion to dismiss Defendant/Counter-Claimant/Counter-Defendant Jerritt Canyon Gold LLC's ("Jerritt") second, third, and fourth counterclaims. ECF No. 24. Jerritt opposed the motion (ECF No. 34) and Nevada Select replied to the opposition (ECF No. 36). Counter-Defendant/Counter-Claimant NouHgt Technologies, LLC ("NouHgt") joined Nevada Select's motion to dismiss. ECF No. 28. The Court denies Jerritt's request for oral argument. For the reasons articulated below, the Court grants Nevada Select's motion in accordance with this Order.

I.      **BACKGROUND**

This matter involves a contractual dispute between Nevada Select and Jerritt over royalty payments owed to Nevada Select for Jerritt's alleged use of specific licensed patents (the "Patents"). The Patents, amongst other things, include a process by which mercury is removed from gas at a specific pH level. ECF No. 21 at 11, 12. The Patents were created by a party not named in this Action and, eventually, they were assigned to NouHgt on May 5, 2015. *Id*. On May 19, 2015, NouHgt granted a perpetual license of the Patents to Veris Gold Corp. ("Veris") for use at the Jerritt Canyon Mine (the "Amended License Agreement"). ECF No. 24-1 at 11, 12. As part of the Amended License Agreement, Jerritt agreed to make per ton royalty payments to NouHgt for its use of the patented mercury removal process. *Id*. The Amended License Agreement states that any improvement to the Patents made by, for, or on behalf of Veris is the property of NouHgt. *Id*. at 14. The Amended License Agreement also contains a "Termination" provision which states the agreement may be terminated only by (1) a mutual agreement in writing from the parties, or (2) after a material default, if the non-defaulting party sends a written demand for cure and the defaulting party fails to cure within 30-days of that written demand. *Id*.

On August 16, 2019, NouHgt assigned the receipt of its royalty payments under the Amended License Agreement to Nevada Select as the royalty purchaser (the "Assignment"). *Id*. at 2, 3. Also on August 16, 2019, Jerritt signed an Acknowledgement & Consent of Assignment of Royalty Payments Agreement (the "Acknowledgement"), acknowledging and consenting to the Assignment and agreeing to pay subsequent royalties to Nevada Select for its use of the Patents.

*Id*. at 17–21. In the Acknowledgement, Jerritt acknowledged that the Amended License Agreement, which includes the Patents, was "current and in full force and effect." *Id*. at 18.

On January 7, 2022, Nevada Select received a letter on behalf of Jerritt in which Jerritt explained that it believed it no longer used the patented mercury removal process. ECF No. 1-1 at 7. Jerritt further informed Nevada Select that it was terminating the Amended License Agreement, the Assignment, and the Acknowledgment and that it was no longer required to make royalty payments to Nevada Select. *Id*. According to Jerritt, a hired consultant studied the patented mercury removal process and found that it inefficiently operated at the patented pH level. ECF No. 34 at 3. The consultant recommended that Jerritt adjust the system's pH parameters to a level outside the patented parameters to improve the process. *Id*. Jerritt followed the consultant's recommendation and adjusted the pH level. *Id*. After it adjusted the pH level, Jerritt claimed that it was no longer using the patented mercury removal process nor obligated to make royalty payments to Nevada Select. ECF No. 1-2 at 3–6.

On January 18, 2022, Nevada Select sent Jerritt a letter explaining that the Amended License Agreement did not provide a provision for termination unless the other party has materially defaulted. ECF No. 1-1 at 7. On August 21, 2022, Nevada Select filed a complaint against Jerritt for breach of contract and breach of the covenant of good faith and fair dealing in the Fourth Judicial District Court of the State of Nevada in and for the County of Elko. ECF No. 1- 1. On September 14, 2022, Jerritt answered the complaint, and denied that it owes or failed to pay royalties to Nevada Select. *See generally*, ECF No. 1-2. In its answer, Jerritt also asserted counterclaims for declaratory relief against Nevada Select and NouHgt in which it seeks: (1) a declaration of patent non-infringement, (2) a declaration that the Patents are invalid and unenforceable, (3) a declaration that the Patents are invalid for patent misuse, and (4) a declaration that no royalties are owed pursuant to the Amended License Agreement. *Id*. at 12–15.

On September 15, 2022, Jerritt removed the matter based on the asserted patent-counterclaims pursuant to 28 U.S.C. §§ 1295(a), 1331, 1338(a), 1367, 1441(a), 1446 and 1454. *See generally*, ECF No. 1. On November 7, 2022, Nevada Select and NouHgt answered Jerritt's counterclaims. ECF Nos. 21, 23. In its answer, NouHgt also asserted counterclaims against Jerritt.

ECF No. 21 at 17–20. On November 7, 2022, Nevada Select filed a motion to dismiss Jerritt's second, third, and fourth counterclaims based on Federal Rule of Civil Procedure 12(b)(6). ECF No. 24 at 2. On November 10, 2022, NouHgt joined in Nevada Select's motion. ECF No. 28 at 2. The motion is addressed below.

## II.  LEGAL STANDARD

A party may seek the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a legally cognizable cause of action. *See* Fed. R. Civ. P. 12(b)(6) (stating that a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted[.]"). To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the notice pleading standard of Federal Rule 8(a)(2). *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) does not require detailed factual allegations; however, a pleading that offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient and fails to meet this broad pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To sufficiently allege a claim under Rule 8(a)(2), viewed within the context of a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the alleged misconduct. *See id.* at 678-679 (stating that "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (quotations and citations omitted). Further, in reviewing a motion to dismiss, the court accepts the factual allegations in the complaint as true. *Id.* However, bare assertions in a complaint amounting "to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not

entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 698) (quotations omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

### III. DISCUSSION

"A motion to dismiss a counterclaim brought pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated under the same standard as a motion to dismiss a plaintiff's complaint." *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 949 (N.D. Cal. Mar. 23, 2015); *see also Boon Rawd Trading Inter'l v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 947 (N.D. Cal. Feb. 19, 2010). In terms of a motion to dismiss counterclaims, the counterclaims become the "operative complaint" and the court must "accept all factual allegations in the [counterclaims] as true" but not afford the same presumption of truth to those allegations in the actual complaint. *Finato v. Keith Fink & Assocs.*, Case No. 2-16-CV-06713-RGK-AJW, 2017 WL 3075510, at *2 (C.D. Cal. May 17, 2017) (quotations and citations omitted). The Court evaluates Nevada Select's motion to dismiss counterclaims accordingly.

Jerritt alleges four counterclaims against Nevada Select and NouHgt, all of which are grounded in the general allegation that Jerritt ceased using the patented mercury removal process after it adjusted the pH parameters of the system. ECF No. 1-2 at 11–15. After the pH adjustment, Jerritt believed that it no longer had an obligation to pay royalties because it no longer utilized the patented process. *Id.* The first counterclaim is for a declaration of non-infringement because Jerritt no longer utilizes the mercury removal process within the patented pH range. *Id.* 12, 13. The second counterclaim is for a declaration that the Patents are invalid and unenforceable because they are anticipated under 35 U.S.C. § 102, obvious under 35 U.S.C. § 103, and indefinite under 35 U.S.C. § 112. *Id.* at 13. Jerritt's third counterclaim is for a declaration that the Patents are invalid for patent misuse because Nevada Select overstepped the boundaries of the Patents. *Id.* at 14. The fourth counterclaim is for a declaration that no royalties are owed pursuant to the Amended License

Agreement because Jerritt no longer uses the patented process and, therefore, has no continued obligation to pay Nevada Select royalties. *Id*. at 15.

In its motion to dismiss, Nevada Select argues that Jerritt's second, third, and fourth counterclaims should be dismissed because they fail to state a claim under the applicable pleading standards. ECF No. 24 at 5. Generally, Nevada Select alleges that Jerritt is equitably and contractually estopped from claiming the Patents are invalid as a basis for withholding royalty payments. *Id*. at 6. As to estoppel, Nevada Select alleges that (1) any allegation Jerritt makes that the Patents are invalid or unenforceable directly contradicts the Acknowledgement in which Jerritt expressly acknowledged that the Amended License Agreement and Assignment were "current and in full force" (*Id*.), and (2) even if Jerritt were legally allowed to renege on its promise and raise a patent invalidity defense, it failed to provide Nevada Select with proper "*Lear* Notice" (*Id*. at 8).

In opposition to Nevada Select's general allegations, Jerritt argues that the Court may not resolve the motion on equitable estoppel grounds because such resolution requires the Court to go beyond the scope of the pleadings. ECF No. 34 at 5. Moreover, Jerritt argues that it has sufficiently pleaded its counterclaims pursuant to the Court's Local Patent Rules. *Id*. at 3. Jerritt cites LRP 1-8 as requiring an early assertion of non-infringement contentions and allowing for additional time to provide detailed descriptions of those contentions. *Id*. Jerritt also alleges that Nevada Select's "*Lear* Notice" argument is inappropriate as it requires the Court to make findings and conclusions of fact at the motion to dismiss stage. *Id*. at 5. Jerritt requests leave to amend its counterclaims should the Court be inclined to grant all or part of Nevada Select's motion. *Id*. at 3, 4.

"Equitable estoppel is a doctrine adjusting the relative rights of parties based upon consideration of justice and good conscience." *United States v. Georgia-Pac. Co*., 421 F.2d 92, 95 (9th Cir. 1970). Accordingly, a party may be prevented from asserting legal rights that should otherwise not be available to it due to the equity and good conscience of that party's conduct. *Goldman v. Vigilant Ins. Co*., Case No. 2-19-CV-02227-JAD-BNW, 2022 WL 4585348, at *5 (D. Nev. Sept. 29, 2022). The doctrine of equitable estoppel focuses on the actions of the defendant. *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir. 1998) (citation omitted). Generally,

whether equitable estoppel applies is a question of fact, but it may become a question of law "when only one inference can be drawn from the facts." *Goldman*, 2022 WL 4585348 at *5.

In Nevada, equitable estoppel requires the asserting party to prove four elements:

> (1) the party to be estopped must be apprised of the true facts; (2) that party must intend that his conduct shall be acted upon or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting estoppel must be ignorant of the true state of the facts; and (4) the party asserting estoppel must have detrimentally relied on the other party's conduct.

*Goldman*, 2022 WL 4585348 at *5 (D. Nev. Sept. 29, 2022) (quoting *Las Vegas Convention & Visitors Auth. v. Miller*, 124 Nev. 669, 191 P.3d 1138, 1157 (2008)); *see Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Illinois*, 983 F.3d 435, 442 (9th Cir. 2020); *see also Lavin v. Marsh*, 644 F.2d 1378, 1382 (9th Cir. 1981). Equitable estoppel "will be found only where all the elements necessary for its invocation are shown to the court." *Georgia-Pac.,* 421 F.2d at 96. Here, the Court finds that the present matter requires more factual development before equitable estoppel can apply. At this early stage of litigation, an equitable estoppel analysis requires the Court to make factual inferences and assumptions that go beyond the scope of the pleadings. The matter is further complicated in a motion to dismiss counterclaims because Jerritt's counterclaims, not Nevada Select's complaint, are afforded the presumption of truth. In any event, the Court finds that some details are lacking based solely on the pleadings. With unresolved factual issues, the Court is not positioned to find that equitable estoppel applies. The Court reserves ruling on equitable estoppel for a later stage of litigation when the parties have provided more detailed facts that fill-in existing gaps. The Court proceeds with its analysis of Nevada Select's motion to dismiss Jerritt's second, third, and fourth counterclaims on a counterclaim-by-counterclaim basis.

**A.   Jerritt's Second Counterclaim**

Jerritt's second counterclaim is for a declaration that the Patents are invalid and unenforceable because they are anticipated under 35 U.S.C. § 102, obvious under 35 U.S.C. § 103, and indefinite under 35 U.S.C. § 112. ECF No. 1-2 at 13. Nevada Select argues that Jerritt failed to specify each challenged claim of the Patents and, as such, fell short of applicable pleading standards. ECF No. 24 at 9–12. Nevada Select further alleges that Jerritt offers no factual basis for its contentions that the Patents are anticipated, obvious, or indefinite. *Id*. at 10. In opposition, Jerritt

argues that alleging the one patent is invalid is the same as alleging that all claims of the referenced patent are invalid. ECF No. 34 at 5, 6. Furthermore, Jerritt alleges that the Court's Local Patent Rules provide grounds for a more detailed counterclaim later. *Id*. at 6. In reply, Nevada Select alleges that Jerritt's argument is legally unsubstantiated, that Jerritt failed to provide the factual basis for its invalidity contentions as required by caselaw, and that the Court's Local Patent Rules do not allow for sufficient facts to be pled at a later stage of litigation. ECF No. 36 at 6, 7.

Claims of patent invalidity supported only by conclusory allegations and a "bare-bones recitation of [patent] statutes" do not meet the pleading requirements set forth in *Twombly* and *Iqbal*. *Xilinx, Inc. v. Invention Inv. Fund I LP*, Case No. C-11-0671-SI, 2011 WL 3206686, at *6 (N.D. Cal. July 27, 2011); *see Qarbon.com, Inc. v. eHelp Corp.*, 315 F.Supp.2d 1046, 1050 (N.D. Cal. Feb. 26, 2004); *see also Wordtech Sys., Inc. v. Integrated Networks Solutions Inc.*, 609 F.3d 1308, 1322 (Fed. Cir. 2010). The plausibility standard is not met by "reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). Instead, "there must be some factual allegations that, when taken as true, articulate" plausibility. *Id*. Moreover, the Court's Local Patent Rules do not provide means to circumvent the plausibility standard regarding a motion to dismiss for failure to state a claim. *Xilinx*, 2011 WL 3206686 at *6 (dismissing conclusory patent invalidity claims even though the Court's Local Patent Rules require detailed invalidity disclosures after the suit is filed).

Jerritt fails to meet the plausibility standard regarding its second counterclaim for patent invalidity and unenforceability because it lacks sufficient factual support for a finding of facial plausibility. As pled, the counterclaim is a mere recitation of patent statutes and conclusory allegations that the Patents fail under these statutes. Jerritt's counterclaim is materially deficient in terms of facts to support its assertion that the Patents are anticipated under 35 U.S.C. § 102, obvious under 35 U.S.C. § 103, and indefinite under 35 U.S.C. § 112. While the Court's Local Patent Rules do allow Jerritt to provide more details at a later stage, they do not permit Jerritt to completely bypass the *Iqbal* and *Twombly* pleading standard. Because Jerritt has failed to state a claim for relief that is plausible on its face, the Court grants Nevada Select's motion to dismiss Jerritt's second counterclaim for patent invalidity and unenforceability.

However, courts may "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). When a district court dismisses for failure to state a claim under Rule 12(b)(6), the dismissing court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Pure Parlay, LLC v. Stadium Tech. Grp., Inc.*, Case No. 2-19-CV-00834-GMN-BNW, 2020 WL 569880, at *3 (D. Nev. Feb. 5, 2020) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)). Here, Jerritt has requested leave to amend its second counterclaim. The Court grants Jerritt's request for leave to amend because amendment may cure the stated deficiencies.

### B.     Jerritt's Third Counterclaim

Jerritt's third counterclaim is for a declaration that the Patents are invalid for patent misuse because Nevada Select overstepped the boundaries of the Patents by claiming royalties are due for a process that falls outside the scope of the Patents. ECF No. 1-2 at 14. Nevada Select argues that the patent misuse claim must be dismissed with prejudice because it is an affirmative defense to a patent infringement claim and Nevada Select has not brought a patent infringement claim in this matter. ECF No. 24 at 13. Alternatively, Nevada Select alleges that Jerritt's patent misuse claim must be dismissed because it has failed to plead or allege any anticompetitive effect which is required of such a claim. *Id*. at 14. In opposition, Jerritt argues that it sufficiently alleged the Patent was misused because Nevada Select improperly extended the scope of the Patent to gain additional value through continued royalty payments. ECF No. 34 at 9.

The Federal Circuit defines the doctrine of patent misuse as the patentee's act of "impermissibly broaden[ing] the 'physical or temporal scope' of the patent grant with anticompetitive effect." *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (quoting *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986)). When the patentee has broadened the scope of the patent in some way that results in anticompetitive effect, the "accused infringer" may invoke the affirmative defense of patent misuse to defeat the patentee's claim of patent infringement. *See id.*; *see also Monsanto Co. v. McFarling*, 363 F.3d 1336, 1341 (Fed. Cir. 2004). Most courts have held that patent misuse is an equitable defense available to an accused infringer to defeat a claim of patent infringement. *See id.*; *see also Philips*

*Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1184 (Fed. Cir. 2005) ("Patent misuse is an equitable defense to patent infringement."); *ESCO Corp. v. Cashman Equip. Co.*, 158 F. Supp. 3d 1051, 1067–68 (D. Nev. Jan. 26, 2016); *Semiconductor Energy Lab'y Co. v. Chi Mei Optoelectronics Corp.*, 531 F. Supp. 2d 1084, 1100 (N.D. Cal. Jun. 19, 2007).

Here, Nevada Select asserts no patent infringement claim against Jerritt. The only claims Nevada Select asserts in this matter are breach of contract and breach of the covenant of good faith and fair dealing. ECF No. 1-1 at 8, 9. Without a patent infringement claim from Nevada Select, Jerritt is not an "accused infringer" to whom the defense of patent misuse is available. *See Shuffle Master, Inc. v. Awada,* 2006 U.S. Dist. LEXIS 71748, *11 (D. Nev. Sep. 26, 2006) (finding that the defendants' counterclaims for patent misuse failed in-part because the counterclaims were not brought in a *patent-infringement action*) (emphasis added); *see also Too Marker Prods. v. Shinhan Art Materials, Inc.*, 2010 U.S. Dist. LEXIS 18731, (D. Or. Feb. 9, 2010) (dismissing patent misuse claim partly because patent misuse is an affirmative defense to a charge of infringement not an independent cause of action); *Matsushita Elec. Indus. Co. v. CMC Magnetics Corp.*, No. C 06-04538-WHA, 2006 WL 3290413, at *3 (N.D. Cal. Nov. 13, 2006) (finding that the defendant sufficiently pled its counterclaim for patent misuse in a *patent-infringement action*) (emphasis added).

Accordingly, the Court grants Nevada Select's motion as to Jerritt's third counterclaim for patent misuse with prejudice. No leave to amend is granted here because amendment would not cure the stated deficiency. *See Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) ("[Leave to amend] is properly denied," when "amendment would be futile.").

### C.     Jerritt's Fourth Counterclaim

As to Jerritt's fourth counterclaim dealing with whether royalties are owed pursuant to the Amended License Agreement, Nevada Select argues that the parties' controlling contractual provisions do not allow Jerritt to unilaterally terminate the Amended License Agreement because of non-use. ECF No. 24 at 15. Nevada Select alleges that even if the Patents were found invalid, the Assignment encompasses additional intellectual property for which royalties would still be owed. *Id*. at 16. Nevada Select also alleges that Jerritt failed to adequately plead how it was excused

10

from performance and, therefore, has failed to state a claim for declaratory relief. *Id*. at 15, 16. In opposition, Jerritt alleges that Nevada Select's argument is beyond the inquiry of a motion to dismiss because it requires the Court to interpret agreements and rewrite them. ECF No. 34 at 10. In reply, Nevada Select argues that this counterclaim is a mirror image of Nevada Select's complaint and redundant of Jerritt's eighth affirmative defense. ECF No. 36 at 10.

District courts have "discretion to dismiss, under Rule 12(b)(6), a declaratory relief counterclaim which mirrors the complaint or raises the same factual or legal issues as those placed at issue in the pleadings." *BOKF, NA v. Estes*, Case No. 3-17-CV-0694-LRH-WGC, 2018 WL 10517233, at *1 (D. Nev. Apr. 10, 2018) (quoting *Englewood Lending, Inc. v. G & G Coachella Invs., LLC*, 651 F.Supp.2d 1141, 1145 (C.D. Cal. Aug. 17, 2009)); *see also Perez v. Roofing*, 2016 WL 898545, at *2 (W.D. Wash. Mar. 9, 2016) (stating "courts use their discretion to dismiss mirror image counterclaims that are redundant of affirmative defenses or claims found in the complaint."). Moreover, courts have discretion to dismiss claims for declaratory relief when those claims are "duplicative" of relief sought in other claims or defenses. *See Kahlenberg v. Bamboo Ins. Servs. Inc.*, Case No. 2-20-CV-06805-VAP-PDX, 2020 WL 13336569, at *7 (C.D. Cal. Dec. 14, 2020); *see also Hyundai Motor Am., Inc. v. Yahala Trading Co.*, Case No. CV-19-1413-JVS-DFM, 2020 WL 3963875, at *3 (C.D. Cal. May 1, 2020).

Here, Jerritt's fourth counterclaim is a mirror image of Nevada Select's complaint. Jerritt's fourth counterclaim alleges that "since it completely stopped utilizing the Invention protected by or claimed in the Patent[s], that it is not required to pay royalties under the Amended [License] Agreement, the Assignment or the Acknowledgment." ECF No. 1-2 at 15. Nevada Select's complaint alleges that "Jerritt breached the obligations it owed under the Assignment and Acknowledgement by failing to render royalty payments due to Nevada Select." ECF No. 1-1 at 8. Jerritt's fourth counterclaim is a mirror image of the complaint and only a factual dispute separates them. When the only real difference between two parties is their "differing views of the facts," dismissal of a counterclaim is appropriate. *Perez*, 2016 WL 898545 at *2.

Jerritt's fourth counterclaim is also a repackaging of its eighth affirmative defense. The counterclaim asks the Court to "enter an order declaring that JERRITT CANYON is not required

to pay royalties for its production which were not produced utilizing the Invention or the Patented process." ECF No. 1-2 at 15. Jerritt's eighth affirmative defense states that "JERRITT CANYON ceasing to pay royalty payments is not a breach of the contract if JERRITT CANYON does not practice or use the Invention referred to in the Amended [License] Agreement or the Patent[s] (to the extent there are any differences)." *Id*. at 10. In both, Jerritt asserts that it owes no royalties because it stopped using the patented processes. The Court finds that this counterclaim is duplicative of Jerritt's eighth affirmative defense. The Court grants Nevada Select's motion to dismiss Jerritt's fourth counterclaim, notwithstanding that the legal dispute between the parties shall remain the same. Leave to amend this counterclaim is denied as amendment would not cure the duplicative nature of the counterclaim. *See Carrico*, 656 F.3d at 1008.

Accordingly, the Court grants Nevada Select's motion to dismiss Jerritt's second, third, and fourth counterclaims in accordance with this Order.

### IV. CONCLUSION

IT IS THEREFORE ORDERED that Nevada Select's motion to dismiss (ECF No. 24) is **GRANTED** in accordance with this Order.

IT IS FURTHER ORDERED that Jerritt's second counterclaim is dismissed with leave to amend within twenty (20) days. Jerritt's third and fourth counterclaims are dismissed with prejudice.

IT IS SO ORDERED.

DATED this 7th day of July, 2023.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE