David A. Carroll, Esq. (NSB #7643)
dcarroll@rrsc-law.com
Anthony J. DiRaimondo, Esq. (NSB #10875)
adiraimondo@rrsc-law.com
Robert E. Opdyke, Esq. (NSB #12841)
ropdyke@rrsc-law.com
**RICE REUTHER SULLIVAN &
CARROLL, LLP**
3800 Howard Hughes Parkway, Suite 1200
Las Vegas, Nevada 89169
Telephone: (702) 732-9099
Facsimile:  (702) 732-7110

Mark Hendricksen, Esq. (*pro hac vice*)
mhendricksen@WellsIP.com
**WELLS ST. JOHN P.S.**
601 W. Main Avenue, Ste. 600
Spokane, WA  99201
Telephone: (509) 624-4276
Facsimile: (509) 838-3424

Shamus T. O'Doherty, Esq. (*pro hac vice*)
sto@randalldanskin.com
**RANDALL | DANSKIN P.S.**
601 W. Riverside Ave., Ste. 1500
Spokane, Washington 99201
Telephone: (509) 747-2052
Facsimile: (509) 624-2528

*Attorneys for Defendant/Counter-claimant/
Counter-defendant Jerritt Canyon Gold LLC
and Counter-defendant/Counter-claimant
First Majestic Silver Corp.*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| NEVADA SELECT ROYALTY, INC., <br><br> Plaintiff, <br><br> vs. <br><br> JERRITT CANYON GOLD LLC, <br><br> Defendant. | Case No. 3:22-CV-00415-LRH-CSD <br><br> **JERRITT CANYON GOLD LLC 'S AMENDED ANSWER TO COMPLAINT AND COUNTERCLAIMS** <br><br> ***DEMAND FOR JURY TRIAL*** |
| JERRITT CANYON GOLD LLC, <br><br> Counter-claimant, <br><br> vs. <br><br> NEVADA SELECT ROYALTY, INC., and NOUHGT TECHNOLOGIES, LLC, <br><br> Counter-defendants. | |

NOUHGT TECHNOLOGIES, LLC,

          Counter-claimant,

    vs.

JERRITT CANYON GOLD LLC, FIRST MAJESTIC SILVER CORP., DOE I through X, inclusive, and ROE ENTITIES I through X, inclusive,

          Counter-defendant.

FIRST MAJESTIC SILVER CORP.,

          Counter-claimant,

    vs.

NOUHGT TECHNOLOGIES, LLC,

          Counter-defendant

RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Pkwy., Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

Defendant Jerritt Canyon Gold, LLC ("JERRITT CANYON" or "Defendant"), by and through their attorney of record, hereby responds to Plaintiff's Complaint as follows, and further submits its Amended Counterclaims, also as set forth below. The Court, by non-final order dated July 7, 2023, [ECF No. 64] granted Plaintiff's Motion to Dismiss Counterclaims Two, Three and Four – but granted Jerritt Canyon leave to amend Counterclaim Two, which Jerritt Canyon is amending as set forth below:

**ANSWER**

1.      JERRITT CANYON admits that this action is pled to be a contract dispute between Plaintiff and Defendant, but denies it owes and/or has failed to pay contractually-agreed royalties to Plaintiff.

2.      JERRITT CANYON admits it is successor-in-interest to a party to an agreement for an exclusive license (the "First License") to United States Patent No. 8,877,148 (the "Patent") from the purported owner thereof, originally made in approximately 2011, for use at JERRITT CANYON's mine in Elko County, Nevada; and JERRITT CANYON further admits that it is successor-in-interest to a party to an Amended License Agreement (the "Amended Agreement") to

the Patent made in 2015. JERRITT CANYON asserts that the "First License" and the "Amended Agreement" speak for themselves. JERRITT CANYON denies the remainder of Paragraph 2.

3.    JERRITT CANYON admits that NouHgt Technologies, LLC ("NOUHGT") entered an Assignment of Royalty Payments Agreement (the "Assignment") in 2019, and asserts that the language of the Assignment relates to payments under the Amended Agreement, and further asserts that the Assignment speaks for itself. JERRITT CANYON denies the remainder of Paragraph 3.

4.    JERRITT CANYON admits signing an Acknowledgment and Consent to the Assignment (the "Acknowledgment"), and further asserts that the language of the Acknowledgment speaks for itself.

5.    JERRITT CANYON admits sending a letter to NOUHGT and Gold Royalty Corp. terminating the Amended Agreement, asserting it is no longer obligated to make any payments thereunder. JERRITT CANYON denies the remainder of Paragraph 5 and further denies violating the terms of the Amended Agreement, the Assignment (to which it is not a party) and the Acknowledgment.

6.    JERRITT CANYON admits that Nevada Select Royalty, Inc. ("Nevada Select") has retained the legal services of Holland & Hart, but denies the remainder of Paragraph 6.

## PARTIES

7.    JERRITT CANYON is without knowledge or information sufficient to form a belief as to the truth of Paragraph 7 to admit or deny Paragraph 7, and therefore denies Paragraph 7 of Plaintiff's Complaint.

8.    JERRITT CANYON admits that it is a Nevada LLC which conducts some business in Elko County, Nevada.

## JURISDICTION

9.    JERRITT CANYON admits that Plaintiff's Complaint purports to be an action arising on contract and further admits that the amount in controversy appears to be in excess of $15,000. However, JERRITT CANYON further avers that the primary contract claim is the Amended Agreement which provides at paragraph 13: " . . . *and the Parties consent to exclusive*

RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Pkwy., Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

*jurisdiction in the federal court located in Nevada, U.S.A.*"  JERRITT CANYON therefore submits that there are questions regarding jurisdiction.

10.    JERRITT CANYON admits that Plaintiff's Complaint concerns a contract regarding the license and/or use of the Patent in Elko County. However, JERRITT CANYON further avers that the primary contract claim is the Amended Agreement which provides at paragraph 13: " . . . *and the Parties consent to exclusive jurisdiction in the federal court located in Nevada, U.S.A.*"

11.    JERRITT CANYON admits having signed the Acknowledgment and asserts that the language of the Acknowledgment speaks for itself. JERRITT CANYON further avers that the underlying contract claim is for alleged royalties owed under the Amended Agreement and not the Acknowledgment, and JERRITT CANYON denies breaching the Acknowledgment and the Amended Agreement.  JERRITT CANYON further denies that Section 7 of the Acknowledgment applies to this dispute.

## GENERAL ALLEGATIONS

### Licensing the Patent

12.    JERRITT CANYON is without knowledge or information sufficient to form a belief as to the truth of Paragraph 12 to admit or deny Paragraph 12, and therefore denies Paragraph 12 of Plaintiff's Complaint.

13.    JERRITT CANYON is without knowledge or information sufficient to form a belief as to the truth of Paragraph 13 to admit or deny Paragraph 13, and therefore denies Paragraph 13 of Plaintiff's Complaint.

14.    JERRITT CANYON is without knowledge or information sufficient to form a belief as to the truth of Paragraph 14 to admit or deny Paragraph 14, and therefore denies Paragraph 14 of Plaintiff's Complaint.

15.    JERRITT CANYON asserts that the language of the Amended Agreement speaks for itself.

16.    JERRITT CANYON admits being a successor in interest to Veris Gold Corp. ("Veris"), but denies the remainder of Paragraph 16.

Rice Reuther Sullivan & Carroll, LLP
3800 Howard Hughes Pkwy, Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

4

17.    JERRITT CANYON asserts that the Amended Agreement speaks for itself. JERRITT CANYON further asserts it has no further or ongoing obligations to pay royalties under the Amended Agreement.

### Assigning Right to Receive Royalty Payments

18.    JERRITT CANYON acknowledges that an Assignment was entered in 2019.

19.    JERRITT CANYON asserts that the language of the Assignment speaks for itself and denies any remainder of Paragraph 19 to the extent it is inconsistent with the language of the Assignment and to the extent it inaccurately portrays the Assignment.

20.    JERRITT CANYON asserts that the language of the Assignment and the status of the License Agreement speak for themselves.

21.    JERRITT CANYON asserts that the language of the Assignment speaks for itself.

22.    JERRITT CANYON admits it entered an Acknowledgment in 2019, and asserts that the language of the Acknowledgment speaks for itself and the obligations thereunder.

23.    JERRITT CANYON asserts that the language of the Acknowledgment and the obligations of each party thereunder, speaks for itself.

### Jerritt Breaches the Amended Agreement

24.    JERRITT CANYON admits sending a January 2022 letter to NOUHGT and Gold Royalty Corp. explaining it is no longer using the licensed Patent and asserting that it is no longer therefore required to make any royalty payments under the Amended Agreement, or other agreements.  Otherwise, JERRITT CANYON asserts that the language of the January 2022 letter speaks for itself.

25.    JERRITT CANYON admits that counsel for Nevada Select responded in January 2022, and asserts that the language of that letter speaks for itself.

26.    JERRITT CANYON denies Paragraph 26 of Plaintiff's Complaint.

27.    JERRITT CANYON denies Paragraph 27, although it acknowledges it ceased making royalty payments as it was no longer obligated to under the Amended Agreement or other documents.

RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Pkwy., Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

28.    JERRITT CANYON denies Paragraph 28 but acknowledges Nevada Select has retained counsel in this matter.

29.    JERRITT CANYON asserts that the language of the Assignment speaks for itself, that it is not a party to the Assignment, denies that Section 9 applies to this underlying dispute because this dispute (and the requirement to pay royalties) is centered in the Amended Agreement and not in the Assignment.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

30.    JERRITT CANYON re-alleges its responses and answers to paragraphs 1 through 29 as though fully set forth herein.

31.    JERRITT CANYON asserts that the language of the Assignment referenced in Paragraph 31 speaks for itself.

32.    JERRITT CANYON acknowledges signing an Acknowledgment, but asserts that the language of the Acknowledgment speaks for itself. JERRITT CANYON further asserts it is not obligated to pay the amounts alleged due and owing by the Plaintiff in this matter.

33.    JERRITT CANYON is without knowledge sufficient to admit or deny all the allegations and implications of Paragraph 33, and therefore denies Paragraph 33 of Plaintiff's Complaint.

34.    JERRITT CANYON denies Paragraph 34 of Plaintiff's Complaint.

35.    JERRITT CANYON denies Paragraph 35 of Plaintiff's Complaint.

## SECOND CLAIM FOR RELIEF

### (Breach of the Covenant of Good Faith and Fair Dealing)

36.    JERRITT CANYON re-alleges its responses and answers to paragraphs 1 through 29 as though fully set forth herein.

37.    JERRITT CANYON acknowledges that contracts include a covenant of good faith and fair dealing, and denies that JERRITT CANYON has breached any such covenant.

38.    JERRITT CANYON acknowledges being a successor in interest to Veris in the Amended Agreement, which tied making royalty payments to the use of the Patent.

RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Pkwy, Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Pkwy., Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

39.     JERRITT CANYON admits signing an Acknowledgment of the Assignment, and further asserts that the language of the Acknowledgment and the Assignment speak for themselves.

40.     JERRITT CANYON is without knowledge sufficient to admit or deny all the allegations and implications of Paragraph 40, and therefore denies Paragraph 40 of Plaintiff's Complaint.

41.     JERRITT CANYON is without knowledge sufficient to admit or deny Nevada Selects expectations, and JERRITT CANYON further asserts and alleges that it at all times has exercised good faith in the performance of its duties under the Amended Agreement and the Acknowledgment.

42.     JERRITT CANYON denies Paragraph 42 of Plaintiff's Complaint.

43.     JERRITT CANYON is without knowledge sufficient to admit or deny Nevada Select's expectations and does not understand the remainder of Paragraph 43 and therefore denies Paragraph 43 of Plaintiff's Complaint.

44.     JERRITT CANYON denies Paragraph 44 of Plaintiff's Complaint.

## DEFENSES REQUEST AND PRAYER FOR RELIEF

Having fully answered Plaintiff's Complaint, Defendant JERRITT CANYON prays and requests that the Court:

1.  Dismiss Plaintiff's Complaint with prejudice and without recovery, and further without any of the relief requested;

2.  Award Defendant JERRITT CANYON's costs and attorney fees incurred herein; and

3.  Enter an order granting such other and further relief as the Court deems just and equitable.

## AFFIRMATIVE DEFENSES AND PRAYER

Having fully answered Plaintiff's Complaint, Defendant JERRITT CANYON avers the defenses and Affirmative Defenses set forth below. Defendant JERRITT CANYON does not admit, in asserting any defense, any responsibility or liability but, to the contrary, specifically denies any and all allegations of responsibility and liability alleged in Plaintiff's Complaint.

RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Pkwy., Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FIRST AFFIRMATIVE DEFENSE**

45.    Plaintiff's Complaint fails to state a claim upon which relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**

46.    Plaintiff's contract claims are rights that are derivative and dependent upon the rights under the Amended Agreement.  Plaintiff has failed to join a real party in interest under the Amended Agreement, namely failed to join NOUHGT.

**THIRD AFFIRMATIVE DEFENSE**

47.    Plaintiff's Complaint fails to identify any aspects of JERRITT CANYON'S manufacturing operations which utilize the Patent or the Invention, and further fails to identify any confidential information, know-how, show how, drawings, manuals, or technical documentation, including all improvements thereon or thereto, that JERRITT CANYON is utilizing in its manufacturing process.   Plaintiff has therefore failed to state a plausible claim to royalties under either the Assignment or the underlying Amended Agreement.

**FOURTH AFFIRMATIVE DEFENSE**

48.    Plaintiff's asserting its entitlement to royalties beyond the term of the Patent ("granting Veris a perpetual license to use the Patent" at Paragraph 14 of Plaintiff's Complaint) and beyond the scope of the Patent, is a misuse of said Patent and the Court should declare the Patent invalid and unenforceable as a result.  JERRITT CANYON has notified Nevada Select that it no longer uses the claimed Patent process and Nevada Select persists in attempting to require JERRITT CANYON to pay royalties on the processes that do not fall within the scope of the Patent per the Amended Agreement.

**FIFTH AFFIRMATIVE DEFENSE**

49.    The Patent should be declared invalid and unenforceable as follows: as being anticipated by prior art per 35 U.S.C. §102; for being obvious by prior art under 35 U.S.C. §103; for being indefinite under 35 U.S.C. §112.  This will be further detailed when Defendant asserts its positions per the Court's Local Patent Rules.

RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Pkwy., Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

## SIXTH AFFIRMATIVE DEFENSE

50.    The Court should declare that the Patent is not infringed by any activities by JERRITT CANYON.  Without limitation, the processes utilized by JERRITT CANYON do not utilize the process claimed in the Patent or any other related or unidentified invention.

## SEVENTH AFFIRMATIVE DEFENSE

51.    The Amended Agreement only requires royalties be paid for the use of the Patent or the Invention under the terms of the Amended Agreement, and not for any processes which do not fall within the scope of the Patent or the Invention, and JERRITT CANYON is therefore not liable for any such claimed royalty payments.

## EIGHTH AFFIRMATIVE DEFENSE

52.    JERRITT CANYON ceasing to pay royalty payments is not a breach of the contract if JERRITT CANYON does not practice or use the Invention referred to in the Amended Agreement or the Patent (to the extent there are any differences).

## NINTH AFFIRMATIVE DEFENSE

53.    In attempting to force JERRITT CANYON to pay royalties when it does not practice or use the Invention or the Patent, Plaintiff has unclean hands and is in violation of the good faith and fair dealing requirements of the Amended Agreement and the Acknowledgement.

## STATEMENT RE: ADDITIONAL POTENTIAL DEFENSES AND RESERVATION OF RIGHTS

54.    Defendant JERRITT CANYON reserves the right to add further and additional affirmative defenses and counterclaims as discovery is conducted.  Further, Defendant JERRITT CANYON hereby incorporates by reference those affirmative defenses enumerated in Rule 8 of the Nevada Rules of Civil Procedure for the specific purpose of not waiving the same at this time. Lastly, to the extent any allegation made by Plaintiff, whether in whole or in part, has not been responded to by this Answer, Defendant JERRITT CANYON responds as follows: Deny.

///

///

# COUNTERCLAIMS

55.    Defendant and Counter-Claimant JERRITT CANYON makes the following counterclaims against Plaintiff and Counter-Defendant Nevada Select Royalty, Inc., and Counter-Defendant NOUHGT pursuant to Rules 13 and 57 of the Rules of Civil Procedure and 28 U.S.C. § 2201:

## PARTIES

56.    Counter-Claimant JERRITT CANYON is an LLC organized and existing under the laws of the State of Nevada, and operates a mine in Elko County, Nevada.

57.    Counter-Defendant and Plaintiff Nevada Select, is a Nevada corporation, and asserts that it is the assignee of the right to receive royalties under the Amended Agreement pursuant to the Assignment.

58.    Counter-Defendant NOUHGT, is a Nevada LLC, and asserts that it is the owner of United States Patent No. 8,877,148 (the "Patent") as well as the Licensor of the Patent under the Amended Agreement and the Assignor of the right to royalties under the Assignment.

## JURISDICTION AND VENUE

59.    Subject matter jurisdiction over all counts herein is conferred upon the U.S. District Court under 28 U.S.C. §1338.  Claims within these counterclaims further present an actual justiciable controversy under 28 U.S.C. §2201 and §2202.   The U.S. District Court further has supplemental jurisdiction over the state law claims per 28 U.S.C. §1367.  The U.S. District Court for the District of Nevada has venue over this matter pursuant to 28 U.S.C. § 1400.  As such, Counter-Claimant intends to remove this action to the U.S. District Court for the District of Nevada.

## GENERAL FACTUAL ALLEGATIONS

60.    JERRITT CANYON is successor-in-interest to the Licensee of the Amended Agreement to license the Patent for use in mining operations at the Jerritt Canyon Mine in Elko County Nevada. The purported benefits of using the licensed process under the Patent was improved mercury removal during the mining manufacturing process and the novelty of the Patent was that it specified a certain pH range.

RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Pkwy., Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

10

61.    After utilizing the process claimed within the Patent and within the specified pH range, JERRITT CANYON was looking to further improve the process and hired a consultant.  The consultant, after studying the process and results concluded that the pH range specified in the Patent was inefficient and not performing and therefore recommended changing the manufacturing parameters to operate outside of the pH range specified in the Patent.

62.    JERRITT CANYON followed its consultant's recommendations and changed its Air Quality Operating Permit to specify the new pH parameters that would be utilized at the JERRITT CANYON facility.

63.    Since JERRITT CANYON was no longer using a process covered by the Patent, it notified the Licensor that it no longer owed ongoing royalties because it no longer utilized the Patent or the Invention which was purportedly licensed.

64.    JERRITT CANYON's current manufacturing process, not falling within the scope of the Patent, does not therefore infringe the Patent absent a license to the Patent, and JERRITT CANYON therefore is requesting a declaratory judgment to be entered by the Court that its current process does not infringe the Patent or utilize any aspects of the Invention to the extent there is any difference.

### FIRST COUNTERCLAIM
### DECLARATION OF NON-INFRINGEMENT

65.    Counter-Claimant JERRITT CANYON realleges paragraphs 01 through 64 as though fully set forth herein.

66.    JERRITT CANYON has changed the pH level utilized in the mercury removal process and therefore no longer uses a process within the scope of the Patent or Invention. JERRITT CANYON has notified the Plaintiff and the Licensor that it no longer utilizes the patented process.

67.    JERRITT CANYON therefore requests that the Court enter an order and judgment declaring that the new JERRITT CANYON process does not infringe the Patent for at least the following reasons:  it does not utilize the claimed novel aspect of falling within pH range specified in the Patent.

68.     It has been necessary for JERRITT CANYON to retain the services of the law firm of Rice Reuther Sullivan & Carroll, LLP, among others, to bring this Counterclaim.  Accordingly, JERRITT CANYON is entitled to recover their reasonable attorneys' fees and court costs incurred herein.

## SECOND COUNTERCLAIM

## DECLARATION THAT THE PATENT IS INVALID AND UNENFORCEABLE

69.     Counter-Claimant JERRITT CANYON realleges paragraphs 01 through 68 as though fully set forth herein.

70.     Since entering the Amended Agreement, JERRITT CANYON has learned and concluded that the Patent did not disclose what it believes is a patentable process or invention based upon prior patents and prior technology that was in the public domain.  JERRITT CANYON alleges that the Patent is therefore invalid based upon the claimed invention being anticipated under 35 U.S.C. §102, and being obvious under 35 U.S.C. §103.

71.     A claim was made that the owner of the '148 Patent was entitled to the benefit of the filing date of a Provisional Application, i.e. claiming priority back to the provisional application. The U.S. Non-Provisional Application No. 12/841,783, was filed on July 22, 2010, and claimed priority to U.S. Provisional Application No. 61/228,503, filed on July 24, 2009 (the "Provisional Application").  To the extent there is no subject matter support or disclosure in the Provisional Application for aspects of the claimed invention, there is no sustainable priority claim to the Provisional Application. Instead, the only priority date will be based upon the filing date of the U.S. Non-Provisional Application – and this affects what is and what is not prior art for invalidity purposes under 35 U.S.C. §102 and 35 U.S.C. §103.

72.     Provisional App. No. 61/228,503, filed on Jul. 24, 2009, to which US Pat. No. 8,877,148 ('148) claims priority, lacks a written description of the following limitations of claim 1:

"a [chlorine solution] pH of between about 6.8 and 7.0;"
"a [chlorine solution] temperature of less than about 40°C.;" and
"a flow rate of about 10.7 gpm/ft$^2$."

RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Pkwy., Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Pkwy., Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

73.     The Provisional Application discusses pH and the importance of its control, but fails to describe any chlorine solution pH range for operation. The Provisional Application only mentions pH values on p. 11, l. 11 ("the pH controller (AIC-48065) set at pH 8.0") and p. 17, l. 32 ("Reaction 1. above proceeds fastest at a pH of around 6.9."). Several pH ranges matching or broader than the claim 1 range are new matter in '148 filed Jul. 22, 2010. Consequently, the effective filing date for the subject matter of claim 1 is Jul. 22, 2010.

74.     The Provisional Application discusses that mercury removal is dependent on temperature (p. 18), but fails to describe any chlorine solution temperature range for operation. The Provisional Application only mentions temperature values for off-gas (pp. 6-7 and 11) and sulfur dioxide scrubber soda ash solution (p. 9). Several temperature ranges matching or broader than the claim 1 range are new matter in '148 filed Jul. 22, 2010. Consequently, the effective filing date for the subject matter of claim 1 is Jul. 22, 2010.

75.     The following are prior art patents that are relevant to and used in Jerritt Canyon's Invalidity Contentions:

| Patent /Publ. No.: | Inventor | Date Issued/Published |
| --- | --- | --- |
| 4,233,274 | Allgulin | November 11, 1980 |
| 6,447,740 | Caldwell | September 10, 2002 |
| 3,849,537 | Allgulin | November 19, 1974 |
| 5,013,358 | Ball | May 7, 1991 |
| WO 98/53900 | Allgulin | December 3, 1998 |
| 6,284,208 | Thomassen | September 4, 2001 |

**Articles/Papers**

| Author | Date Publ. | Description |
| --- | --- | --- |
| Zhao Yi. | 2008 | Removal of Elemental Mercury by Sodium Chlorite Solution |
| Zhao L. | 1999 | Mercury Absorption in Aqueous Hypochlorite |
| Fugleberg | 1999 | Finish Expert Report on Best Available Techniques in Zinc Production |
| Haaland | | Mercury Removal from Off-gasses at Tinfos Manganese Plant (Oye Smelteverk Norway) |

RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Pkwy., Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

76.    While some of the above-referenced patents and publications are specifically discussed below, the others are still presented within the attached claim chart to show that there are multiple sources for these known elements of processes for removing Mercury, and some could interchangeably be used with patents specifically discussed below as an additional or a cumulative source of prior disclosure.

77.    Looking at the claim chart, the '148 Patent is invalid under 35 U.S.C. §102 (b) as follows and is shown on the claim chart accompanying these contentions:  Claims 1, 2, 3 and 6 of the '148 Patent are invalid under 35 U.S.C. §102 (b) as being anticipated by U.S. Patent No. 4,233,274, issued to inventor Allgulin and issued November 11, 1980.  The Allgulin teaches each element of Claims 1, 2, 3, and 6. While Allgulin may not explicitly teach the chlorine solution having a flow rate of about 10.7 gpm/ft$^2$, the flow rate of the chlorine solution is an inherent property that is not an inventive step - choosing a flow rate is a matter of routine engineering choices or routine optimization of a process.

78.    Claims 1, 2, 3 and 6 of the '148 Patent are invalid under 35 U.S.C. §103 (obviousness) over Allgulin.  Per the attached claim chart, Allgulin teaches each and every element of Claims 1, 2, 3 and 6. To the extent Allgulin does not teach the chlorine solution having a flow rate of about 10.7 gpm/ft$^2$, flow rate is a simple matter of routine optimization and a person of ordinary skill in the art would optimize flow rate without undue experimentation. Flow rate of the chlorine solution is an inherent property for the chlorine solution, which obviously must have some flow rate.  A flow rate of 10.7 gpm/ft$^2$ may be considered inherent in the Allgulin disclosure.

79.    Claims 1, 2, 3 and 6 of the '148 Patent are invalid under 35 U.S.C. §103 (obviousness) over U.S. Patent No. 6,447,740 issued to inventor Caldwell, in view of Zhao, Y., et. al.  Removal of Elemental Mercury by Sodium Chlorite Solution, Chem. Eng. Technol.  200, 31, No. 3, 350-354 ("Zhao").  As can be seen in the attached claim chart, Caldwell teaches most of the elements of Claims 1, 2, 3 and 6. However, to the extent that Caldwell does not teach contacting the Mercury bearing gas with the chlorine solution at a temperature of less than about 40° C, it would be obvious to refer to Zhao and its discussion of the reaction at temperatures lower than 40° C as found in Zhao.  To the extent Caldwell does not teach the claimed flow rate, flow rate is a matter of

14

RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Pkwy., Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

simple experimentation for routine optimization and a person of ordinary skill in the art would optimize the flow rate without undue experimentation. Furthermore, flow rate of the chlorine solution is an inherent property, i.e. it must have some flow rate. The combination of Caldwell and Zhao should be interpreted to render obvious a wide range of possible flow rate so long as the flow rate is not excessive or unreasonably difficult to obtain and maintain.

80.     Claim 4 of the '148 Patent is invalid under 35 U.S.C. §103 (obviousness) based upon Allgulin in view of U.S. Patent No. 5,013,358, issued to inventor Ball.  To the extent that Allgulin does not teach an ORP above about 800mV, the Ball reference does teach this. It would be obvious for one of ordinary skill in the art to look to other references such as Ball and utilize an ORP above about 800 mV.

81.     Claim 4 of the '148 Patent is invalid under 35 U.S.C. §103 (obviousness) based upon Allgulin in view of U.S. Patent No. 6,284,208, issued to inventor Thomassen, or alternatively International Publication No. WO 98/53900, assigned to Boliden Contech.  See the attached claim chart. Allgulin teaches the elements of Claim 5; to the extent Allgulin does not teach the chlorine solution flowing continuously, Thomassen and Boliden Contech both do teach the continuously flowing chlorine solution.

82.     35 USC 102/103 (pre-AIA) Anticipation/obviousness by non-patent literature Jerritt Canyon is further contending that the '148 Patent is both anticipated and obvious in light of one or more of Nevada State Record documents set forth below, as well as the use-based anticipation for what the references disclosed was being used prior to the filing of the Provisional Application and/or the '148 Patent.

83.     The following are the initial prior art references referred to herein:

**Nevada State Public Records**

**NSR1**   Nevada State Public Document:   System Prior to Stop Order ("Response to Order 2008-13A and Roaster Recommissioning," Jan. 2009, Enviroscientists Inc.).

**NSR2**   Nevada State Public Document:  Recommissioned System ("Response to Order 2008-13A and Roaster Recommissioning," Jan. 2009, Enviroscientists Inc., § 3.7, pp. 59-62).

**NSR3**   Nevada State Public Document: Proposed System ("Response to Order 2008-13A and Roaster Recommissioning," Jan. 2009, Enviroscientists Inc., § 5.1, 5.2, pp. 71-77).

**NSR4**   Nevada State Document: "Mercury Control Report, Wet Gas Scrubbing System," Dec. 2007, Focus Environmental, Inc. (missing) as referenced in "Response to Order 2008-13A and Roaster Recommissioning," Jan. 2009, Enviroscientists Inc.

**NSR5**   Nevada State Public Document:  "Mercury Control Report, Wet Gas Scrubbing System," Apr. 9, 2008, Focus Environmental, Inc.

**NSR6**   State of Nevada Public Document, Division of Environmental Protection, NDEP Bureau of Air Pollution Control, October 28, 2008, Memorandum, referencing the interim operating plan for adding a mercury calomel system to the existing pollution control system.   The plan was handed to NDEP officials for review and comments, meeting included Graham Dickson.

**NSR7**   Nevada State Public Document:  "Jerritt Canyon Re-Start Proposal," Oct. 21, 2008, Yukon-Nevada Gold Corp.

**NSR8**   Paper/Publication:  "A Study of Mercury Dissolution in Aqueous Solutions of Sodium Hypochlorite," Author:  Sizeneva, Russian Journal of Applied Chemistry, Vol. 78, 2005.

**NSR9**:   KENNEDY, L., "Queenstake Resources - Jerritt Canyon mine, April 9, 2008 Enforcement Conference," Memorandum, Apr. 9, 2008.

84.    Jerritt Canyon is providing herewith a claim chart of Claims 1-6 which refers to some or all of the above referenced prior art documents, and refers to the particular portions of said references that include all the limitations contained in all of Claims 1-6.   Many or most of the references reflect what was being publicly used at what is the Jerritt Canyon facility.  The references, being publicly available documents from the State of Nevada, are also publication-based prior art.

85.    The attached claim chart illustrates Claims 1-6 of the '148 Patent in the first column, and in subsequent columns illustrates certain items from the prior art set forth above, namely NSR1, NSR2, NSR3, NSR4, NSR5, NSR8 and NSR9.  For each prior art reference, the location is identified in the prior art documents which corresponds to the claim element on that row in the table.  This claim chart clearly shows that the method *claimed* in the '148 Patent was used and/or published before the critical date for the patent coverage.   As can be seen, several of the NSR prior art references include all the elements of the claims, which constitutes anticipation under 35 U.S.C. §102.

RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Pkwy., Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

86.    The references which may not show all the elements are still evidence in order to fill in the missing elements, a person of ordinary skill in the art can easily look to the other references (which is all related and readily available).

87.    The processes recently practiced by Jerritt Canyon are essentially practicing old methods such as the Boliden-Norzink process and/or the calomel process.  To the extent that NouHgt is attempting to enforce the '148 Patent against Jerritt Canyon's use thereof, the '148 Patent is invalid for allegedly covering the longstanding and well-known prior art.

88.    In further reviewing the details in the specification of the Patent, JERRITT CANYON has further concluded that certain aspects of the specification of the Patent do not meet the definiteness requirements of the patent laws, and alleges that the Patent is invalid under 35 U.S.C. §112.

89.    Jerritt Canyon contends that the '148 Patent does not meet the written description requirements of 35 U.S.C. §112 (pre-AIA), for at least the following reasons:

a.    The '148 specification does NOT literally support "about 10.7 gpm/ft$^2$" and the support relied on by Applicant and accepted by the examiner is mistaken, for the reasons set forth below.

i.    Applicant pointed to three mercury scrubber recycle pumps discussed in col. 13, l. 62 to col. 14, l. 1 of '148 that each "operates at 300 gpm." ("Response to Office Action of August 31, 2012," Feb. 28, 2013, p. 4) Applicant also pointed to the tails gas scrubber in col. 14. ll. 41-43 that is "6 foot in diameter." (Id.) Applicant used these two values to calculate 10.7 gpm/ft$^2$ during prosecution of the '148 Patent (though the calculation is erroneous) and to justify amending claim 1. (Id.)

ii.    The tails gas scrubber under heading "1.7 Tails Gas Scrubbing System" in col. 14 is not the "mercury scrubber" under heading "1.6 Mercury Scrubbing Systems (I) and (II)" in col. 13. Thus, diameter of the tails gas scrubber does

RICE REUTHER SULLIVAN & CAROLL, LLP
3800 Howard Hughes Pkwy., Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

not disclose the diameter of the mercury scrubbers. The '148 specification is silent regarding the diameter of the mercury scrubbers.

   iii.   The '148 specification col. 14, l. 42 states "[t]he tail gas scrubber may be a 25 foot tall packed tower." The '148 specification col. 13, l. 41-43 states the mercury scrubbers contact waste gas with the chlorine solution "in the 20 foot packed beds." There is no indication otherwise that the tail gas scrubber and the mercury scrubbers are of the same structural design.

b.   The '148 specification does not support "about" 300 gpm, nor does it support the term "about" relative to the 6 foot in diameter reference, which was the value used to calculate the 10.7 $gpm/ft^2$ flow rate.    Thus, it does not follow that the '148 specification supports "about" 10.7 $gpm/ft^2$.

90.   Indefiniteness 35 U.S.C. §112 (pre-AIA)  Jerritt Canyon asserts that the '148 Patent does not meet the definiteness requirements of 35 U.S.C. §112 (pre-AIA), for at least the following reasons:

a.   The term "about" as used in the claims is indefinite.  Three terms in claim 1 include the range modifier "about"; however, the specification fails to reveal intrinsic evidence in support of the meaning of "about", and fails to particularly point out and distinctly claim the subject matter of the invention, by failing to provide a sufficiently definite meaning of "about", as it used in Claim 1 (specifically relative to the use of "about" in the phrase "and wherein said chlorine solution has a flow rate of about 10.7 gpm/ft).  Further, the term "about" relative to the flow rate was added by amendment to the claims even though not supported in the specification.

b.   The phrase "a flow rate of about 10.7 $gpm/ft^2$" does not meet the definiteness requirements of 35 U.S.C. §112, for at least the following reasons:

   i.   The '148 specification does NOT literally support this limitation. The '148 specification supports recycle pump operation specifically "at 300 gpm" and the tails gas scrubber being specifically "6 foot" in diameter.  The specification refers to these two parameters specifically and not qualified by

18

RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Pkwy., Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

the term about – and those two parameters were the basis for the Applicant to calculate flow rate in adding it to Claim 1.

ii.   This phrase "a flow rate of about 10.7 gpm/ft$^2$" was the key limitation added by amendment that resulted in allowance. The examiner stated in the Notice of Allowability that the claimed "chlorine solution sent to react with mercury has a very specific flow rate of 10.7 gallons per minute/ft2" that distinguished the prior art. The examiner did not mention "about" 10.7 gpm/ft$^2$ and likely failed to consider the implications of allowing the use of the term about in that context.

iii.  Also, the "6 foot in diameter" is for the tails gas scrubber and the '148 specification does not support sending any chlorine solution to the tails gas scrubber to react with mercury, as in the reason for allowance. In step 160 of Fig. 1, only water is sent to the tails gas scrubber as also supported by col. 14, ll. 39-54. This contrasts with steps 140 and 150 in Mercury I and II Scrubbers using "dissolved chlorine gas" and "Mercuric Chloride and dissolved chlorine gas," respectively. The '148 specification col. 7, ll. 65-66 merely describes "[s]oda ash (Sodium Carbonate) may be added as necessary for pH control."

91.   Failure to Disclose Prior Art to the U.S. Patent Office.  The Patent Applicant failed to disclose to the USPTO in the filing and/or prosecution of the '148 Patent, the following material items/references:

a.   Applicant failed to disclose to the U.S. Patent Office during prosecution of the '148 Patent, the –State of Nevada Document entitled "Response to Order 2008-13A and Roaster Recommissioning," dated January 2009, Enviroscientists Inc., to the USPTO. An unsigned signature block for the inventor Graham Dickson appears on page vii of said reference. Though Dickson's signature does not appear on copy of said reference taken from the NDEP online records, as President and CEO of the company, Dickson had actual or constructive knowledge thereof and failed to disclose it as required by the

duties of disclosure required by the patent laws and regulations. This document was produced by Jerritt Canyon in its initial disclosures.

b.  Applicant failed to disclose to the U.S. Patent Office during prosecution of the '148 Patent, the SIZENEVA, I.P., et al., "A Study of Mercury Dissolution in Aqueous Solutions of Sodium Hypochlorite," Russian J. of App. Chem., Vol. 78, No. 4, 2005, pp. 546-548.

    i.  Page 547, col. 2, "The range pH 6-7 corresponds to the maximum decomposition rate of hypochlorite and, as a result, to a high rate of mercury oxidation by active chlorine evolved in the decomposition."

    ii.  Page 548, col. 1, "The maximum rate of mercury dissolution is observed at pH 6.5-6.9, which correlates well with published data for the maximum rate of hypochlorite decomposition (pH ~7)."

    iii.  Sizeneva, et al. was referenced on p. 30 of "Jerritt Canyon Re-Start Proposal," Oct. 21, 2008, Yukon-Nevada Gold Corp., 391 pp. ("Re-Start Proposal") as support for pH 6.9 in NaOCl mercury scrubbers and a copy of Sizeneva, et al. was included at p. 41-43. Dickson Graham had knowledge of Sizeneva, as described below.

c.  Applicant failed to disclose to the U.S. Patent Office during prosecution of the '148 Patent, the "Jerritt Canyon Re-Start Proposal," Oct. 21, 2008, Yukon-Nevada Gold Corp., 391 pp.

    i.  Section 1, p. 22 of Re-Start Proposal included a description prepared by "Celec" regarding "Present Jerritt Canyon System" with "NaOCl Mercury Scrubber." No author is named for Section 1, but Graham Dixon is believed to be president of Celec at the time. Also, Graham Dickson is a stated author of Sec. 2 (p. 45), Sec. 3 (p. 94), and part of Sec. 4 (p. 150).

    ii.  Re-Start Proposal was submitted to NDEP in an Oct. 22, 2008 meeting attended by Graham Dickson as stated in "Yukon-Nevada Gold - Jerritt Canyon Mine Enforcement Conference," Memorandum, Oct. 28, 2008, Joseph Prary.

20

iii. Re-Start Proposal was not included in NouHgt Initial Disclosures of the present suit, though many other documents from NDEP records were included.

d. Applicant failed to disclose to the U.S. Patent Office during prosecution of the '148 Patent, the Nevada State Public Document: Mercury Control Report, Wet Gas Scrubbing System, filed April 9, 2008 by Focus Environmental, Inc.

92.    JERRITT CANYON therefore requests that the Court enter an order and judgment declaring that the Patent is invalid and unenforceable as follows: as being anticipated by prior art per 35 U.S.C. §102; for being obvious by prior art under 35 U.S.C. §103; for being indefinite under 35 U.S.C. §112. This will be further detailed when Counter-Claimant asserts its positions per the Court's Local Patent Rules.

93.    It has been necessary for JERRITT CANYON to retain the services of the law firm of Rice Reuther Sullivan & Carroll, LLP, among others, to bring this Counterclaim. Accordingly, JERRITT CANYON is entitled to recover their reasonable attorneys' fees and court costs incurred herein.

**THIRD COUNTERCLAIM**

**DECLARATION THAT THE PATENT IS INVALID FOR PATENT MISUSE**

94.    It is noted that the Court has dismissed this Third Counterclaim with prejudice in its non-final July 7, 2023 order [ECF No. 64]. Counter-Claimant JERRITT CANYON realleges paragraphs 01 through 93 as though fully set forth herein.

95.    A United States patent is the grant of a limited monopoly for a limited amount of time (generally 20 years from the patent application date) granted to the owner of novel inventions. For many years patent owners attempted to obtain licenses and other fees related to their patents beyond the scope of the grant of the patent and further beyond the scope of the term of the patent. This is a misuse of the limited grant of monopoly and is grounds for invalidating the patent.

96.    In this case, the Patent only covers the manufacturing process wherein the pH falls within a certain limited range and only is valid and enforceable for a limited amount of time. The Counter-Defendants have greatly overstepped the boundaries of the limited monopoly granted by

the Patent by claiming royalties are due and owing for processes which are not covered by the Patent and in perpetuity (far beyond the term of the Patent).

97. The court has not issued any claim construction order as to the claims of the '148 Patent and Jerritt Canyon reserves the right to revise these contentions based upon the Courts construction of terms. Jerritt Canyon's contentions contained in any charts or tables are not, and should in no way be seen as, admissions or adoptions related to claim scope, or as any admission that any particular element is met in any particular way, or that the claims meet the requirements of 35 U.S.C. § 112.

98. Jerritt Canyon contends that each of the asserted claims are invalid at least under 35 U.S.C. §§ 102, 103 and/or 112, and further invalid based upon the patent applicant's failure to disclose prior art known to it to the U.S. Patent Office during the prosecution of the '148 Patent. The invalidity claim charts accompanying these disclosures list specific examples in the prior art references where the element or limitation is disclosed, either expressly or inherently, for each limitation of the asserted claims. Additionally, the disclosures reveal examples of disclosures, which when considered from the viewpoint of how a person of ordinary skill in the art would have considered each limitation, render the claim(s) as a whole, obvious. The references, however, may contain additional support upon which Jerritt may rely. Accordingly, Jerritt Canyon reserves the right to rely on portions of the prior references that are not cited, not currently available without further discovery, and other publications and expert testimony as aids in understanding and interpreting the cited portions, as providing context thereto, and as additional evidence that a claim limitation is known or disclosed.

99. JERRITT CANYON therefore requests that this Court enter an order and judgment declaring that the Counter-Defendants have misused the Patent through the Amended Agreement, and other agreements, and through its attempts to collect royalty payments beyond the scope of the limited monopoly granted it by the Patent. JERRITT CANYON further requests that this Court therefore declare the Patent invalid and unenforceable for the remainder of its term or in the alternative, declare the Patent invalid and unenforceable until the Counter-Defendants cease their misuse of the Patent.

RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Pkwy., Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

100.    It has been necessary for JERRITT CANYON to retain the services of the law firm of Rice Reuther Sullivan & Carroll, LLP, among others, to bring this Counterclaim.  Accordingly, JERRITT CANYON is entitled to recover their reasonable attorneys' fees and court costs incurred herein.

<div align="center">

**FOURTH COUNTERCLAIM**

**DECLARATION THAT NO ROYALTIES ARE OWED PURSUANT TO THE AMENDED LICENSE AGREEMENT**

</div>

101.    It is noted that the Court has dismissed this Fourth Counterclaim with prejudice in its non-final July 7, 2023 order [ECF No. 64].  Counter-Claimant JERRITT CANYON realleges paragraphs 01 through 100 as though fully set forth herein.

102.    JERRITT CANYON alleges that since it completely stopped utilizing the Invention protected by or claimed in the Patent, that it is not required to pay royalties under the Amended Agreement, the Assignment or the Acknowledgment.

103.    The parties have a dispute in controversy relative to JERRITT CANYON's obligation to continue to pay royalties and JERRITT CANYON requests that this Court enter an order declaring that JERRITT CANYON is not required to pay royalties for its production which were not produced utilizing the Invention or the Patented process.

104.    It has been necessary for JERRITT CANYON to retain the services of the law firm of Rice Reuther Sullivan & Carroll, LLP, among others, to bring this Counterclaim.  Accordingly, JERRITT CANYON is entitled to recover their reasonable attorneys' fees and court costs incurred herein.

<div align="center">

**PRAYER FOR RELIEF – COUNTERCLAIMS**

</div>

THEREFORE, Counter-Claimant respectfully request that the Court:

1.    Enter an order and judgment according to the declaratory relief sought above relative to the Amended Agreement, the non-infringement of the Patent and the invalidity of the Patent;

2.    Award Counter-Claimant their costs and attorney fees in this action; and

3.    Enter such other and further relief to which the Counter-Claimants may be entitled as a matter of law or equity, or which the Court determines to be just, equitable and proper.

RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Pkwy, Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY**

Defendant JERRITT CANYON hereby demands a trial by jury on all issues so triable.

Pursuant to NRS239B.030, the undersigned does hereby affirm that the preceding document and attached exhibits, if any, do not contain the social security number or personal information of any person.

Defendant/Counter-claimant/Counter-defendant JERRITT CANYON GOLD LLC and Counter-defendant/Counter-claimant FIRST MAJESTIC SILVER CORP. by and through their undersigned attorneys of record, hereby request a trial by jury on all issues so triable.

**ATTACHMENTS**

Jerritt Canyon is attaching the following documents, which are hereby incorporated herein by this reference as though fully set forth herein:  Exhibit 1 Jerritt 2023-01-22 NPL Invalidity Claim Chart 1 and Exhibit 2 Jerritt Invalidity Claim Chart 2 U.S. Patent 8877148.

DATED this 27th  day of July, 2023.

By: /s/Mark W. Hendricksen
Mark W. Hendricksen, Esq. (*pro hac vice*)
mhendricksen@WellsIP.com
WELLS ST. JOHN P.S.
601 W. Main Avenue, Ste. 600
Spokane, Washington 99201

-and-

David A. Carroll, Esq. (NSB #7643)
Anthony J. DiRaimondo, Esq. (NSB #10875)
Robert E. Opdyke, Esq. (NSB #12841)
RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Parkway, Suite 1200
Las Vegas, Nevada 89169

-and-

Shamus T. O'Doherty, Esq. (*pro hac vice*)
sto@randalldanskin.com
RANDALL | DANSKIN P.S.
601 W. Riverside Ave., Ste. 1500
Spokane, Washington 99201

*Attorneys for Defendant/Counter-claimant/
Counter-defendant Jerritt Canyon Gold LLC and
Counter-defendant/Counter-claimant
First Majestic Silver Corp.*

1

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

2      I HEREBY CERTIFY that on the 27ᵗʰ day of July, 2023, I authorized the electronic filing

3  of the foregoing with the Clerk of the Court using CM/ECF system which will send notification

4  of such filing to the e-mail address(es) of the following persons:

5          Laura K. Granier, Esq. (NBS #7357)
          Robert Ryan, Esq. (NBS # 7164)
6          Jessica L. Coberly, Esq. (NBS #16079)
          HOLLAND & HART, LLP
7          5441 Kietzke Lane, Suite 200
          Second Floor
8          Reno, NV 89511-2094
          T: (775) 327-3000
9          F: (775) 786-6179
          lkgranier@hollandhart.com
10         jlfreitas@hollandhart.com
          *Attorneys for Nevada Select Royalty, Inc.*
11
          Cody S. Mounteer, Esq. (NBS #11220)
12         Brian R. Hardy, Esq. (NBS #10068)
          Jared M. Moser, Esq. (NBS #13003)
13         MARQUIS AURBACH
          10001 Park Run Drive
14         Las Vegas, NV 89145
          T: (702) 382-0711
15         F: (702) 382-5816
          cmounteer@maclaw.com
16         bhardy@maclaw.com
          jmoser@maclaw.com
17         *Attorneys for NouHgt Technologies, LLC*

18
                          */s/ Carrie Lusarreta*
19                         An Employee of Wells St. John P.S.

20

21

22

23

24

25

26

27

28

<div align="center">

25

</div>

<div style="margin-left: left;">

RICE REUTHER SULLIVAN & CARROLL, LLP
3800 Howard Hughes Pkwy., Suite 1200
Las Vegas, Nevada 89169
(702) 732-9099

</div>